WALTON C. WITTINGHAM

46 429
47 406

v.

CHARLES A. LIGHTHIPE and ALBERT D. TRAPHAGEN.

1. Every valid contract for the conveyance of land creates, in a qualified sense, the relation of trustee and *cestui que trust*, provided it be one which equity will enforce.

2. Courts of equity never enforce an executory contract which is without consideration; they treat it as a nullity.

3. Courts of equity will not enforce a promise to create a trust or make a declaration of trust unless the promise is supported by a valuable consideration.

4. Courts will not enforce a promise to make a gift.

On demurrer.

*Mr. John R. Emery,* for the demurrants.

*Mr. R. W. Parker,* for the complainant.

VAN FLEET, V. C.

The defendants have demurred to the complainant's bill. They say, assuming everything alleged in the complainant's bill to be true, he has no case. The following are the facts on which the complainant rests his right to relief: In March, 1881, a decree was made by this court, in a suit wherein the Mutual Benefit Life Insurance Company were complainants, and Israel D. Condit and Caroline, his wife, were defendants, directing the sale of the lands described in a mortgage made by Israel D. Condit and his wife to the insurance company, to raise sufficient money to pay the mortgage debt due to the insurance company and also to another encumbrancer—subsequently the mortgaged premises were advertised for sale under a *fieri facias* issued to enforce the decree—the first and third tracts of the mortgaged premises "comprised certain mill properties and outlying lands which were expected to be of possible future value for disposition

in parcels, so that said Caroline was anxious to control the same"—thereupon an agreement, in writing, was made between Caroline Condit and the defendants, that the defendants should attend the sale and purchase the first and third tracts for the benefit of Caroline, which the defendants signed and delivered to Caroline, and which is in these words:

" We, the undersigned, do hereby pledge ourselves to Mrs. Israel D. Condit that if we become the purchasers of the mill property, and the water rights of the same, that are now advertised to be sold at sheriff (or master's) sale, that after paying the claim of the Orange National Orange Bank, and the claim of A. D. Traphagen, and all lawyers' fees, costs and expenses of every kind, incurred in prosecuting the said claims, and all interest on the same now due or to become due, that all the balance of moneys or other property itself, if the water rights bring enough to pay said claims, interest, lawyers' fees, costs and all other expenses, then that all the balance of moneys or other property, if any, shall be transferred to·Mrs. Israel D. Condit, or her assigns. Also, that in case a certain suit instituted by the said bank and the said A. D. Traphagen against Lewis J. Lyons that the remainders, whether in money or property, after paying the aforesaid claims, interests, costs, lawyers' fees, and all other expenses incurred in prosecuting the same, the excess, if any, shall be transferred to Mrs. Israel D. Condit or her assigns."

The bill then alleges that the defendants, after the agreement was made, became the purchasers of the first and third tracts, and that a deed was made to them for those tracts on the 7th day of September, 1881, which they accepted as trustees for Caroline under the trust aforesaid; that in March, 1887, Caroline died intestate, leaving three children, two of whom have, since then, transferred all their rights under the agreement to the complainant; that the defendants have, since they obtained title, sold and conveyed parts of the first and third tracts for more than enough money to pay all the claims mentioned in the agreement, and that they still retain title to lands, and also hold moneys, which, by the terms of the agreement, they are bound to convey and pass over to the successors in right of Caroline. An account and specific performance are asked. This is the case made by the bill, and the whole of it.

The complainant's right to relief rests entirely on the notion that the agreement set out in the bill created the relation of

trustee and *cestui que trust* between the defendants and Mrs. Condit. This is the ground on which the complainant's right of action was put on the argument. The bill does not claim that a trust was created in any other way, or that any other cause of action exists except such as the agreement gives. No fraud or imposition is alleged, nor does the bill aver that prior to the making of the agreement the defendants either occupied in fact or assumed a fiduciary relation, of any kind, towards Mrs. Condit. Under the bill, as at present framed, the agreement constitutes the sole foundation of the complainant's right to relief. The principle is well settled, that every valid contract for the conveyance of land creates, in the view which equity takes of such transactions, the relation, in a qualified sense, of trustee and *cestui que trust.* The vendor becomes the trustee of the legal title of the land for the vendee, and the vendee becomes the trustee of the purchase-money for the vendor, but no such relation is created unless the contract be one that equity will enforce. The contract under consideration does not belong to that class. It is without consideration of any kind. None appears upon its face; the bill shows none—the defendants' promise, therefore, is purely voluntary—a mere *nudum pactum.* Such a promise cannot be enforced. Equity will not enforce a contract which is without the support of a valuable consideration. Thus, for example, if a party should enter into a voluntary agreement to transfer stock to another, or to give him a sum of money, or to convey to him certain real estate, equity would not assist in enforcing the agreement. *1 Story Eq. Jur.* § *793b.* Courts of equity never enforce an executory contract which is without consideration; they treat it as a nullity. *Ownes* v. *Ownes, 8 C. E. Gr. 60, 62; Woodruff* v. *Morristown Institution for Savings, 7 Stew. Eq. 174, 177.*

There is nothing on the face of this contract, or in its language, which furnishes the slightest evidence that the defendants intended to create a trust in favor of Mrs. Condit. Their purpose, on the contrary, seems rather to have been to bind themselves to make over to her, by way of gift, whatever should remain of the land they purchased after certain claims were paid. The only

purpose which it is possible to attribute to them, either under the language of the contract or the averments of the bill, or both combined, is to make a gift, and not to create a trust. But, had the language of the contract been entirely different in this respect—had it plainly evinced a purpose on the part of the defendants to transfer, by way of gift, to a third person, for the benefit of Mrs. Condit, all that should remain of their purchase, after the claims mentioned in the contract were paid, still, I think, it is clear that no ground of action would have existed. Courts of equity have, from a very early time, uniformly refused to enforce such promises. Lord Thurlow, now quite one hundred years ago, said : " Whenever you come into equity to raise an interest by way of trust, you must have a valuable, or at least a meritorious, consideration. Nothing less will do." *Colman* v. *Sarrel, 1 Ves. 50, 54.* The principle which the courts apply in such cases was laid down by Lord Eldon, in *Ellison* v. *Ellison, 6 Ves. 656, 661,* as follows: " I take the distinction to be, that if you want the assistance of the court to constitute you a *cestui que trust,* and the instrument is voluntary, you shall not have that assistance for the purpose of constituting you a *cestui que trust;* as upon a covenant to transfer stock, if it rests in covenant, and is purely voluntary, this court will not execute that voluntary covenant; but if the party has completely transferred the stock, though it is voluntary, yet the legal conveyance being effectually made, the equitable interest will be enforced in this court." This principle was recognized and enforced in *Pulvertoft* v. *Pulvertoft, 18 Ves. 84, 99; Bunn* v. *Winthrop, 1 Johns. Ch. 329, 337,* and *Hayes* v. *Kershow, 1 Sandf. Ch. 258, 261.*

This is not the first attempt which has been made to induce a court of equity to compel a person who has evinced an intention, by writing, to make a donation to go on and complete the gift, on the ground that the writing constituted a declaration of trust, and made the donor the trustee of the donee. Such an attempt was made in *Antrobus* v. *Smith, 12 Ves. 39.* There a father, who had subscribed for stock of a corporation, wrote, on one of the receipts which had been given for a payment he had made on account of his subscription, an assignment of his stock to his

daughter Anna. After the death of both the father and the daughter, a bill was filed, by persons claiming to stand in the right of the daughter, to compel the father's personal representative to execute an effectual transfer of the stock. The plaintiffs' right to the transfer of the stock was put on the ground that the assignment amounted to a declaration of trust. Sir William Grant, in deciding the case, said, in substance, that the father was not otherwise a trustee than as any man may be called so, who professes to give property by an instrument incapable of conveying it. He was not in form declared a trustee; nor was that mode of doing what he proposed in his contemplation. He meant a gift. He says he assigns the property. But it was a gift, not complete. The property was not transferred by the act. * * * There is no case in which a party has been compelled to perfect a gift which in the mode of making he has left imperfect. The cases enforcing this principle are numerous. Two only will be cited. *Edwards* v. *Jones, 1 Myl. & C. 226, 237; Dillon* v. *Coppin, 4 Myl. & C. 647, 671.*

The complainant's view, if adopted, would entirely obliterate all distinction between the enforceability of contracts founded on a good consideration and contracts without consideration. The latter might not, under his view, be enforceable simply as contracts, but he would give them equal efficacy with contracts supported by a consideration by having them treated as valid declarations of trust. As yet it has not been supposed that they possess such efficacy.

The demurrer must be sustained.