WILLIAM H. REICH

*v.*

AUGUSTA W. REICH et al.

[Decided August 21st, 1914.]

1. A parol agreement by a mother to transfer land worth at least $6,000 to her son in consideration of his agreement to execute to her a mortgage on the land for $2,000, and pay her annually for life an amount equal to five per cent. on such sum, the mortgage to be canceled on her death, if regarded as a sale, was not based on a consideration sufficient, in proportion to the value of the property, to justify a decree of specific performance.

2. Where a mother, to induce her son to remain with her, offered to convey to him a tract of land worth $6,000 on his agreeing to pay her interest on $2,000 at five per cent. annually during her life, and he, in consideration of the agreement, entered and made certain expenditures in improvements, &c., which, however, were comparatively small and could be secured to him by decreeing a lien on the land, he could not enforce the gift in equity.

Heard on bill, answer, replication and proofs.

*Mr. Joseph M. Degnan,* for the complainant.

*Messrs. Smith & Dugan,* for the defendants.

EMERY, V. C.

This is a bill filed by a son against his mother for the specific performance of an oral agreement to convey a tract of land to him, being about fifty-six acres of her farm, comprising, altogether, about eighty-three acres. The fifty-six acres are situated on the southerly side of a public road which runs through the farm, and on this portion a barn is located, the homestead being on the northerly or twenty-seven-acre portion.

The oral agreement set up in the bill, which is denied by the answer, is one for the conveyance of two tracts of land, the one

a lot of one acre, situate on the southerly side of the road, and the other, the fifty-six acres in question. The one-acre lot has been conveyed, but the defendant refused to convey the farm, and after this refusal, conveyed her entire farm to a daughter, Mrs Cobane, and her husband, who have been made parties to the bill, because of this conveyance. This subsequent conveyance was made with notice of complainant's claim, and, as also appears from the answer, was made without the payment of any consideration, and for the purpose of protecting the mother against complainant's claim. The oral agreement set up in the bill is that Mrs. Reich agreed to convey to William Reich, the complainant, the one-acre lot, free and clear, and that the fifty-six-acre tract should be conveyed to him on condition that he give a mortgage to his mother for $2,000 with interest at five per cent., payable semi-annually during her natural life, and after her death to be null and void. So far as appears by the bill, no further or other money payments to the mother were agreed to be made as the consideration for the conveyance, but the further consideration, claimed to be established by the proofs, is substantially as follows: Complainant, then unmarried, had been living on the farm and with his mother and his sister, then unmarried, for about three years, and carrying on the dairy business, with his own stock, paying no rent for the farm but, as he claims, maintaining, or assisting in maintaining, the common household. In December, 1912, proposing to marry and to give up the farm, he finally, at the request of his mother, gave up his plans for removing and consented to remain on the farm, upon certain conditions; these were, first, that he should have a deed for the one-acre lot, free and clear, for the purpose of building his house on it, the money for which he proposed to procure in part by giving a mortgage on the lot; next, that his mother was to convey the fifty-six-acre tract to him, taking back a mortgage for $2,000, the interest of which at five per cent. he was to pay semi-annually during her life, and at her death, it was to be null and void. It appears by the proofs that the final oral agreement was that the complainant was to have the option of paying to his mother the principal sum of $2,000 at any time, and that this provision was made on the suggestion by his mother that her

29

son might sell the farm after he received the deed. He was also to pay the taxes and insurance. This agreement was made in December, 1912, and the deeds were to be given as soon as the surveys could be made. The deed for the one-acre lot was delivered on or about January 29th, 1913, and complainant at once erected his dwelling thereon, costing, as he says, over $3,000, of which $1,800 was procured by mortgage thereon. The mortgagee took this mortgage, which he thought a rather large one, for the security offered, relying on complainant's statement that he was to have the farm and intended to install a water system for the barn, and this mortgagee had previously been informed by Mrs. Reich that she was going to give her son William this land adjoining the one-acre lot as long as she lived. The surveying of the farm was delayed on account of the weather, but complainant continued the occupation of the fifty-six acres, which was separated by a highway from the remaining portion of the farm on which the homestead stood. He kept his cattle thereon, using the manure, worth about $300, on the farm, and made substantial repairs to the barn, at a cost, as he says, of about $200, and also repaired the fences. He also incurred an expense of $435 in putting down an artesian well upon the one-acre lot. This was done for the purpose of providing water for use at the barn on the farm property adjoining, and the expense was increased by reason of this, beyond that necessary for the use of his dwelling alone. The connection of the water for use in the barn has, however, not been made. This part of the farm so occupied by the son was the portion which, by a will Mrs. Reich had drawn, was given to complainant. Mr. Kahn was the executor of the will and knew of this fact at the time when the parties were brought together by him. The oral agreement was made in his presence and with his advice given to both parties.

I think the proofs show substantially the oral agreement for conveying the lands set up in the bill with the addition of the provision for complainant paying the taxes and insurance and the option of complainant to pay the principal sum of $2,000 at any time during his mother's life, in discharge of the mortgage, and that the possession of the fifty-six acres taken under the oral agreement was a sufficient part performance to take the case out

of the operation of the statute of frauds. The real point of difficulty in the case is whether both conveyances were not, and were not intended to be, so substantially in the nature of gifts that the specific performance of them farther than actually carried out cannot be enforced. That no money or other valuable consideration passed, or was intended to pass, to the mother at the time of the agreement, is obvious, for the agreement on the son's part was only to pay interest on $2,000 mortgage on the land conveyed, and as the grantee was to have possession of the land, the interest is presumably supplied by the rents or profits. The lowest valuation put on the lands by complainant's witnesses is $4,000, and defendant's witnesses place it as high as $200 per acre. It is worth, in my judgment, at least $6,000, and if the agreement is to be considered as resting only on the basis of a sale, and for a valuable consideration, then it would clearly be so hard and unreasonable a bargain that the court should not enforce it. The annual payment of $100 during Mrs. Reich's life (her age is sixty-five), estimated according to the tables, would be only about $700, and even if she had the right to demand the payment of the principal sum of $2,000, this sum is so much below the real value that on the basis merely of a sale, it should not be specifically enforced.

The transaction as to the farm was, in my judgment, intended at the time to be substantially a gift to the son in consideration of love and affection, and the question is whether the expenses subsequently incurred by the complainant and the changes in his plans, made by him, relying on the agreement to convey the farm in him, in connection with this consideration of love and affection, are sufficient to entitle him to compel the execution of the parol gift. In this case the complainant on his part did not bind himself by any contract to stay on the farm during his mother's life or to render any future services to her in consideration of the conveyances, and the whole consideration on his part, therefore, apart from natural love and affection, was his giving up his plan for immediate removal, and the expenses or outlay made after the agreement. The expenses incurred in building the house on the lot conveyed to him, being on his own land, or the mortgage given thereon, cannot be considered as part of the

expense incurred in carrying out an oral agreement to convey the farm, for this expense was incurred for his own benefit, which he retains, and there has been no proof or claim that any loss has or will result by reason of it. Mrs. Reich certainly gets no benefit from this expense. Actual pecuniary loss by reason of change in complainant's original plan for leaving the farm has not been established, and as there was no agreement on complainant's part that he should stay on the farm either during his mother's life or for any definite time, if the agreement should now be specifically enforced as to the farm claimed, complainant would be as free at any time to leave the farm and rent or sell it as he is now to sell or lease the house and lot. His original consent to stay cannot be considered as any substantial consideration on which to base a decree for specific performance.

As to the expenses incurred by him after taking possession of the farm, on the strength of the agreement, the situation is different, and had these been of such an amount and character as permanently to increase the value of the farm, and, if in addition the complainant was unable to be compensated therefor except by specific performance, he might then be entitled to relief.

The cases in our courts where parol agreements to devise or convey property in consideration of services rendered or other valuable consideration subsequently given, have been specifically enforced, have been those where the remedy at law was inadequate, and such enforcement was necessary in order to prevent fraud. See cases cited in *Clawson* v. *Brewer (1904), 67 N. J. Eq. 201, 207; affirmed on appeal, 70 N. J. Eq. 803 (1905); Vreeland* v. *Vreeland (Chancellor McGill, 1895), 53 N. J. Eq. 387;* cases cited *pp. 389, 390.*

But, in this case, the amounts expended on the farm were comparatively small, and for the expenses so incurred, of which the farm receives the benefit, he may, I think, by the decree of the court on this bill, under the prayer for general relief, be protected. This is upon the principle that where the court refuses to perform a verbal agreement against the vendor, it may, in favor of the vendee in possession, decree compensation for the fair value of improvement. *Pom. Spec. Perf. (3d ed.)* § *129;* citing, *inter al., Parkhurst* v. *Van Cortlandt (1814), 1 Johns.*

*Ch. 273;* approved in *Copper* v. *Wells* (*Chancellor Vroom, 1830*), *1 N. J. Eq. 10, 17*. The principle of these cases covers, I think, a case where the court cannot decree specific performance over an objection for want of consideration or inadequacy. This being the status of the complainant as to the changes made or expenses incurred by him in reliance on the agreement to convey the farm, the case must be finally disposed of, I conclude, on the basis of it being in substance one where the donee applies to the court for the specific performance of an incomplete gift. The settled general rule in equity is that a valuable consideration is necessary. *Fry Spec. Perf.* (*4th ed.*) § *116; Pom. Spec. Perf.* § *39; Drake* v. *Lanning* (*Vice-Chancellor Pitney, 1892*), *49 N. J. Eq. 452,* collecting the New Jersey case and *Tunison* v. *Bradford* (*Vice-Chancellor Green, 1910*), *49 N. J. Eq. 210, 214.*

None of our decisions have ever extended the right to specific performance to an agreement which appears on the proofs to be substantially a gift based only on the good consideration of love and affection. In my judgment, these are not enforceable.

The bill, so far as it seeks specific performance, should be dismissed, but under the prayer for general relief complainant is entitled to compensation for repairs and improvements made by him on the property.

I will hear counsel as to other expenses being chargeable. For the amounts chargeable he is entitled to a lien upon the premises. The conveyance to the Cobanes is voluntary and with notice, and no defence against the lien.