In re application for possession of ANNA JUDGE.

[Argued March 27th, 1920. Decided May 19th, 1920 ]

1. Parental guardianship by nature and for nurture is not assignable except by statutory provisions.

2. Where a mother gave her child to another, she being in destitute and friendless circumstances at the time, and an absolute and formal surrender not being agreed upon at the time, and, subsequently, reclaims her child, being in circumstances to properly care for and support her, she will be granted possession of the child unless thereby the well-being of the child is jeopardized. The infant's welfare, all matters considered, is paramount and compelling in the eyes of the chancellor as *parens patria.*

3. The petitioner, being a minor, cannot sue out a writ of *habeas corpus,* but the chancellor will, in a proper case, appoint a next friend to do so.

---

On *habeas corpus.*

*Mr. W. Holt Apgar,* for the petitioner.

*Mr. Eric H. Jentz,* for the respondent.

BACKES, V. C.

This *habeas corpus* was sued out by a mother to recover her two-year-old child. The mother was married at fifteen to a worthless fellow who deserted her shortly afterwards. She was destitute and friendless when the baby came, and in her despair gave it to Mrs. Grice, the respondent, to raise, when it was six weeks old. Shortly afterwards the mother, quite naturally, repented, but Mrs. Grice had disappeared from Baltimore, where these things took place, and no trace of her or the child could be found until just before this writ was taken out, when they were located at Jersey City. The indications are that Mrs. Grice, fearing a change of heart on the part of the mother, left with the child, to conceal its whereabouts, and to thwart any effort to regain its custody or to make the attempt difficult. I incline to this view because of the circumstances of Mrs. Grice leaving her home and husband in Baltimore, where he was regularly employed, months in advance of his return to Jersey City, their former place of residence, and this without intimation to the mother. There she palmed off the baby as her own flesh and blood. Her explanation of her hasty and covert departure, that she became homesick and did not like Baltimore nor its people, is, to my mind, a shallow pretense.

When the child was given into the care of Mrs. Grice a formal and absolute surrender had not been agreed upon. That that was the aspiration of Mrs. Grice; and the contemplation of the distracted mother, is believable, but the juncture had not been reached. The two had consulted the authorities and were informed that under the laws of Maryland there could be no surrender until six months after birth, and the matter was left in abeyance. Had there been a renunciation in fact, it would not have been binding in law. The parental guardianship, by nature and for nurture, is not assignable. *Mayne* v. *Baldwin, 5 N. J. Eq. 454; In re Williams, 77 N. J. Eq. 478.* Transfer

by legal adoption is a statutory exception. But were the law otherwise, a surrender could not, in conscience, be upheld because of the physical and mental disparity between the two women. It would be monstrous to hold this sick and sorely tried girl-mother to the supreme sacrifice. In its legal and moral aspects the mother's privilege was in nowise prejudiced by the negotiations with Mrs. Grice, which, at most, were tentative, and though the latter has by unstinted care and devotion created a reciprocal relation of keenest love and affection between her and the child, and though heartaches and sorrow will follow a separation, she must yield to the superior and natural right of the mother unless thereby the well-being of the child will be jeopardized. Instances may arise where, in attachments of this kind, courts will not interfere, but it will be found, upon an examination of the reported cases, that the parent's right will not be denied unless the foster alliance was protracted, and acquiesced in in a spirit of abandonment, and a severance will be disadvantageous to the child. That is not the case here. While much sympathy is due Mrs. Grice we must not be unmindful that her plight is self-imposed, nor of the infinite grief her rash conduct brought to the mother.

The infant's welfare, all matters considered, is paramount and compelling in the eyes of the chancellor as *parens patria*. The parental right, however, is never lost sight of as an influential and determining factor. If in a contest as here, between a parent and a stranger in possession, for the custody of an infant of tender years there is equality as to character, condition, habits and surroundings of the claimants, the natural right will prevail; mere material advantage to the child will not count against the inherent right. The strict legal right will not be subordinated unless circumstances of weight and importance connected with the welfare of the child exist to overpower it, and these circumstances must be such as to imperil the personal safety, morals, health or happiness of the child. This is the doctrine of the court of errors and appeals laid down in *Richards* v. *Collins, 45 N. J. Eq. 283.* The authorities are uniform in maintaining the natural relationship wherever

consistent with the well-being of the child. *Mayne* v. *Baldwin, supra; Baird* v. *Baird, 21 N. J. Eq. 384; Griffin* v. *Gascoigne, 60 N. J. Eq. 256; Hesselman* v. *Haas, 71 N. J. Eq. 689.* The latest expression is by Mr. Justice Minturn for the court of errors and appeals in *Ziezel* v. *Hutchinson, 109 Atl. Rep. 300.* In *Warnecke* v. *Lane, 75 All. Rep. 233; Kopcinski* v. *Richardson, 94 Atl. Rep. 32; Cole* v. *Cole, 89 N. J. Eq. 381; 104 Atl. Rep. 830,* the parental rights were subordinated to the child-welfare principle, but in each instance the award to others was provisional and until the restoration of parental fitness.

*Winans* v. *Luppie, 47 N. J. Eq. 302,* relied upon by counsel for Mrs. Grice, is not applicable in principle to the question under discussion. That case involved the validity of a statutory adoption granted by the orphans court and the point considered and decided was that the surrender by the mother of her infant child to the parents by adoption was an abandonment within the statutory sense, and that her consent was not legally necessary to the adoption.

Now as to the relative fitness of the claimants. Mrs. Grice is a housewife, without children. Her grief is that she can bear none, and her anguish has all the more intensified her solicitude and love for the foster child. Her husband is a railroader with substantial wage, a man of good character, and whose attachment and fondness for the youngster is second only to that of his wife. Their home is comfortable, and they are in every way fit to raise the child as becomes people in their station in life. On the other hand, the mother in appearance and deportment is a splendid type of young womanhood, of unblemished character and reputation, clean in thought and pure of speech. She has religious training and church affiliations. These qualities and virtues are vouched for by relatives and acquaintances, and stand unquestioned. Her home is with her aunt in Baltimore, and the surroundings are wholesome, and the child is to be with her. She is employed as a saleswoman in a florist store at twenty dollars and more a week, an amount sufficient to support the two. During her enforced absence in the daytime, from eight until five o'clock, the child will

be in the care of the aunt, who has small children of her own, and of her mother, the grandmother of the petitioner. The daily absence of the mother is argued as an inconvenience and discomfort to the child, not to be suffered if it remains with the Grices. That may be, but the mother's handicap is the child's misfortune, for which there will be ample compensation, presently in an awakening realization of its real mother's care, and later in life, in the contentment and happiness that will flow to both from the reunion.

And as to the change from the foster parents to the real mother; that will undoubtedly distress the child for a time, but it will not involve its welfare. In its new environment the past will soon be blotted from memory.

Counsel also stresses the concern of the child if, perchance, the mother should be overtaken by protracted illness, or should die, or lose her position. The answer is that like calamity might follow if similar misfortunes should overtake either of the Grices. Their position in life, socially and financially, affords no immunity to possible dire consequences.

The petitioner is a minor. She cannot sue out a writ of *habeas corpus* to relieve another, nor even to release herself. Upon her appeal to the chancellor he will, in a proper case, appoint a next friend. As there has been no objection on this score an order may be entered amending the petition by adding the clerk of the court as next friend.

I will advise an order awarding the child to the mother.