Two causes have been brought to hearing together — one, ahabeas corpus for the custody of Ruth Gaylord, a seven-year-old *Page 428 
infant; the other, a suit for specific performance of the contract discussed below.
Mr. and Mrs. Gaylord lived in Summit with Ruth and a daughter of Mr. Gaylord by a former marriage, Alice, who is about two years older than Ruth. In the household were also Mrs. Gaylord's sister, Mrs. Frank, and the latter's husband. Mrs. Gaylord's parents, Mr. and Mrs. Munzing, were accustomed to living in Florida half the year and with the Gaylords the other half. Mrs. Gaylord died March 22d 1933. Thereafter, her husband, with the children and the Franks, continued to live in the same house. The Munzings joined them as usual.
About three months before Mrs. Gaylord's death, her husband, at her dictation, wrote out a last will which she executed. Its principal provisions were these:
"I wish my Mother, Mrs. Louis Munzing, and my sister, Mrs. Gertrude Frank, to take care of my daughter Ruth, for which they shall receive the proceeds of the sale of this house I am now living in. They are not to use this money speculatively, but are to keep it wisely invested, to be used only as needed. They are also to have the Seven hundred (700) shares of Walker Mining stock which I now hold.
"In view of the above arrangement, my father will cancel the note for five hundred dollars ($500.00) which he now holds against my husband.
"I give to my husband the 1929 Graham Paige Sedan which is in my name."
All concerned desired at first to carry out the wishes of Mrs. Gaylord, and on November 23d 1933, they executed an agreement which contained Mr. Gaylord's consent that Mrs. Frank "shall have custody of the person of said minor Ruth until she becomes of age."
The parties continued together until August, 1935. Meanwhile, relations between Mr. Gaylord and his wife's relatives gradually became strained. Mrs. Frank exercised more control over Ruth than she had theretofore, and Mr. Gaylord regretted the contract he had executed, especially that part relating to custody. On August 13th, 1935, without warning to the others, he took the children and left the household, first going to his own parents' home in Pennsylvania, and later *Page 429 
to a house which he had rented in Elmira, New York. A widowed aunt of his, Mrs. Ryan, keeps house for him.
Mrs. Frank asks the court to award her the child. She recognizes that the law gives to a father the right of custody (the mother being dead) unless he is an unfit person, or unless in some way he has forfeited the right, but she asserts that he has forfeited this right by transferring it to her. She relies on three decisions of Vice-Chancellor Stevenson. Ousset v.Euvrard, 52 Atl. Rep. 1110; Ex parte Kirschner,111 Atl. Rep. 737, and Ex parte Hoines, 112 Atl. Rep. 613. The vice-chancellor held that it was competent for a parent to enter into an agreement by which custody was transferred and that the agreement would be enforced unless the interest of the child requires that a different course be taken. "There is an important distinction between the parents' right of custody and the parents' duty with respect to support. The two things are wide apart. The parental right may be transferred or abandoned. Except by adoption proceedings, the parental duty is untransferable."
We have another line of cases which conflict with those of Vice-Chancellor Stevenson, and which I will follow. Mayne v.Baldwin (Halsted, C.), 5 N.J. Eq. 454; Albert v. Perry
(Green, C.), 14 N.J. Eq. 540; In re Williams (Howell,V.C.), 77 N.J. Eq. 478; Ziezel v. Hutchinson (Court ofErrors and Appeals), 91 N.J. Eq. 325; In re Judge (Backes,V.C.), 91 N.J. Eq. 395; In re Pfahler (Fallon, V.C.),102 N.J. Eq. 161. These decisions lay down the rule that custody of minor children is a personal trust in the father and that he has no general power to dispose of them to another. A parent cannot, by contract, alienate the right to the control of his children. An agreement between a parent and a third person, by which the former renounces custody, is not binding upon the parent.
There is no suggestion that Mr. Gaylord is unfit to have charge of his daughter. Indeed, one of the pleasing features of this case was the scrupulous care of Mrs. Frank and the Munzings to do justice to Mr. Gaylord's character, despite their anxiety to regain the little girl. The father will be *Page 430 
awarded the custody, but let him be generous in his victory and see that Ruth frequently visits her mother's relatives.
The house mentioned in Mrs. Gaylord's will belonged to her and her husband as tenants by the entirety, so that on her death, the whole title vested in Mr. Gaylord, despite the will. In the contract of November 23d 1933, Mr. Gaylord promised to convey the house to Mrs. Munzing, Mrs. Frank and himself jointly, in trust to sell, and out of the proceeds to pay the expenses of the last illness and funeral of Mrs. Gaylord (about $600); to pay to Mr. Munzing $500 due him on Mr. Gaylord's note mentioned in the will; to pay Mr. Gaylord one-third of the balance and to retain the other two-thirds for use "in defraying expenses of the education of said minor child unless * * * an emergency exists which justifies the use of said proceeds or any part thereof in the care and maintenance of said minor child."
Mr. Gaylord has not deeded the real estate to the trustees as contemplated by the agreement. The other parties to the contract prosecute the specific performance suit to compel him to make conveyance.
"No rule is better settled than that specific performance of an agreement not founded on valuable consideration will not be enforced in equity." East Ridgelawn Cemetery v. Frank,104 Atl. Rep. 594; Wittingham v. Lighthipe, 46 N.J. Eq. 429. "Upon application for specific performance of a contract, the court must be satisfied that the claim is fair, reasonable and just, and the contract equal in all its parts." Crane v. DeCamp,21 N.J. Eq. 414. "Courts of equity seldom interfere to set aside sales and contracts on the ground of inadequacy of price. They leave the parties to their legal remedies, but when they are called on for extraordinary aid to enforce a contract, they take the liberty to examine into the consideration to be given, its fairness and equality, and all the circumstances connected with it. And if anything manifestly inequitable appears in that part of the transaction, they will never lend their power to carry the contract into execution." Rodman v. Zilley, 1 N.J. Eq. 320;Worth v. Watts, 76 N.J. Eq. 299, 304. "While a voluntary settlement in trust remains executory, equity will not enforce it but will *Page 431 
consider it a nullity." Landon v. Hutton, 50 N.J. Eq. 500,508. "It is an established principle that a mere intent to establish a voluntary trust cannot be aided by a court of equity; a voluntary trust — as distinguished from one supported by a consideration — is essentially a gift and must be fully executed to render it effective as such." Cessna v. Adams, 93 N.J. Eq. 276; Austin v. Young, 90 N.J. Eq. 47.
In the contract before me, the considerations stated are the "mutual promises, concessions and agreements herein contained; * * * the love and affection of each and all of the parties herein for said minor child; * * * the respect for and mutual desire to carry out the last wishes of the decedent." Of these, only the "promises, concessions and agreements" may constitute a legal and valuable consideration.
Mr. Munzing agreed that payment of Mr. Gaylord's promissory note "may be deferred until the sale of the real estate hereinafter described and paid out of the proceeds thereof." The contract was evidently drawn without inspecting the note and under the impression that it was past due. Actually, it was not payable until November 22d 1934. The agreement was dated November 23d 1933, and required the sale by the trustees of the real estate prior to August 1st, 1934, if a price of $12,000 could be obtained and if not, then prior to November 1st, 1934, for the best price obtainable.
Mr. Frank, as executor, agreed to transfer the automobile to Mr. Gaylord and to assign the mining stock (worth about $450) to Mrs. Munzing and Mrs. Frank to hold for the benefit of Ruth, on the same terms stated above for her share of the proceeds of the real estate. Mrs. Munzing and Mrs. Frank assented and agreed to serve as trustees without compensation. These dispositions were probably in accord with Mrs. Gaylord's will, although that instrument may perhaps be construed to make Mrs. Munzing and Mrs. Frank the beneficial legatees of the stock.
Such are the only considerations for Mr. Gaylord's promise to convey property which the parties evidently valued at $12,000, and which was subject to encumbrances of $6,000. Even if some of the covenants of the opposite parties constitute, in a legal sense, a valuable consideration, it remains *Page 432 
clear that the provision for Ruth was intended to be substantially a gift from her father. But if the contract be considered as supported by a consideration, the consideration is so trifling in comparison with the value of the property as to make the transaction unfair and inequitable. In neither case may specific performance be decreed. Reich v. Reich, 83 N.J. Eq. 448.
Mrs. Munzing and Mrs. Frank have each paid part of the expenses of the estate in reliance upon the agreement. Mr. Munzing still holds Mr. Gaylord's note. These items will be charged on the land in substantial accord with the contract.