106 N.J. Super. 220 (1969)
254 A.2d 809
HERMAN H. DIERKSEN AND JESSIE M. DIERKSEN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
EVELYN ALICE ALBERT AND ANDREA J. ALBERT, JR., HER HUSBAND; PETER D. ALBERT, KATHERINE ALBERT AND JEANNE LOUISE ALBERT; AMERICAN CYANAMID COMPANY, A CORPORATION OF THE STATE OF MAINE; AMERICAN TELEPHONE & TELEGRAPH COMPANY, A CORPORATION OF THE STATE OF NEW YORK; CHAS. PFIZER & CO., INC., A CORPORATION OF THE STATE OF DELAWARE; CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., A CORPORATION OF THE STATE OF NEW YORK; GULF OIL CORPORATION, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA; AND SAFEWAY STORES, INCORPORATED, A CORPORATION OF THE STATE OF CALIFORNIA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1969.
Decided July 1, 1969.
*222 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Milton T. Lasher argued the cause for appellants (Messrs. Hennessy & Hennessy, attorneys).
Mr. George Warren, guardian ad litem, pro se, argued the cause for respondents.
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiffs sue for a judicial declaration revesting full title in them to certain corporate securities previously placed by them in the name of their daughter, Mrs. Albert, who has disappeared and whose whereabouts are unknown. The Chancery Division refused the relief sought, but held that Mrs. Albert was a trustee of the stock, and directed the designation of a substituted trustee to carry on her duties as such.
In November 1962 plaintiffs contemplated transferring certain securities to their daughter and son, and expressed their intention in a memorandum to them reading as follows:
 " ALAN AND EVELYN
As gifts of corporate stock are made, start a separate savings account with dividends from stock, and deposit all dividends in this savings account.
Dividends and bank interest in the account will be subject to income tax payments. All such payments to come from account.
During July of each year remit an amount in multiples of $100 so that balance in account is between $100 and $200. Remittances to be made to H.H.D. [plaintiff husband]. Upon death of H.H.D. remittances to be made to J.M.D. [plaintiff wife].
Make a will. One section of will to list the number of shares in each Company. These to be willed to H.H.D. and J.M.D. share and share alike. In case of death of either H.H.D. or J.M.D. all stock to be willed to survivor. Upon death of both H.H.D. and J.M.D., your ownership and control of stock become absolute. *223 However it is our wish that you give consideration to passing this stock on to your direct descendants as it has been done for 4 generations.
As additional gifts are made, revise will to list new additions. H.H.D. or J.M.D. may decide in future to dispose of some of the stock and or buy additional stock in same or different companies. All proceeds and charges to go thru account.
The remittances are to be accruances of dividends and bank interest only and not the proceeds of sale of securities unless otherwise advised.
Expenses of will to come from account.
Keep records.
 Nov. 12, 1962" (emphasis by the court)
Certain of the securities were subsequently delivered to Mrs. Albert and registered in her name. She also executed a will in accordance with the memorandum.
On September 28, 1965 Mrs. Albert, who had been living in Canada with her husband and children, disappeared and has not since been heard from. She last sent her parents dividends from the account in August 1965. In March 1965 Mr. Dierksen visited his daughter to help salvage her marriage. At the suggestion of his son-in-law, the shares of stock were redelivered by Mrs. Albert to Mr. Dierksen as "safer" in his custody.
The trial court construed the arrangement as an express trust and held plaintiffs could not revoke it in the absence of the reservation of a power by the plaintiffs-settlors to do so. This is undoubtedly good law, generally speaking, if an effective trust was created. But note the parallel of the terms of this memorandum with the instrument involved in Trenton Banking Co. v. Howard, 187 A. 569, 571 (Ch. 1936), affirmed 121 N.J. Eq. 85 (E. & A. 1936), which provided: "The grantor reserves the right to add to or decrease said fund from time to time as she may desire." It was held that this clause "no doubt" comprised the right to revoke the trust, either in whole or in part. It is clearly inferable from the third-from-the-last paragraph of the instant memorandum that plaintiffs reserved the right to direct a sale of any of the shares and have the proceeds remitted *224 to them (as well as to add shares to the trust). Even if this is a trust, therefore, plaintiffs had the power under Howard to revoke it.
However, we conclude the language of the memorandum and surrounding circumstances repel any proper conclusion that a trust was created. It is true that no particular form of words is necessary to create a trust so long as the intent to create the relationship which the law denominates a trust is found to exist, in all the circumstances, and the other legal requisites therefor are satisfied. See Wolf v. Wolf, 136 N.J. Eq. 403, 404-405 (E. & A. 1945). But it is equally true that a donative transfer which fails as a valid gift because of the absence of one of the essential elements of a gift inter vivos will not be saved by construing the transaction as a trust. 1 Scott on Trusts (3rd ed. 1967), § 31, pp. 243-44. Restatement of Trusts 2d, § 31 and comment a.
The essential elements of a valid inter vivos gift are: (a) donative intent, (b) actual delivery of the subject matter, and (c) donor must strip himself absolutely and irrevocably of all dominion and control over the subject matter of the gift. In re Dodge, 50 N.J. 192, 216 (1967); Swayze v. Huntington, 82 N.J. Eq. 127, 133 (Ch. 1913), affirmed o.b. 83 N.J. Eq. 335 (E. & A. 1914).
The donative feature of the instant transaction was the delivery of the securities to Mrs. Albert, with the intent that she should have a future absolute interest in what was left of them in her possession should she survive both grantors, her parents. But dominion, control and right of disposition of the subject matter of the gift was substantially retained by grantors for their lifetimes. Not only were they to receive all net income from the securities and reversion of title should Mrs. Albert predecease them, but they reserved the right to direct sale of any of the securities and to receive the proceeds of such sales should they so advise Mrs. Albert. These features clearly precluded the existence of the third element above referred to as requisite for a valid gift, i.e., absolute surrender of dominion and control by the donor. The rights of *225 no third person intervening, plaintiffs had the right to return of the subject matter of the transfer, vis a vis the transferee.
Looked at another way, a gift of an equitable interest in property (here, Mrs. Albert's putative future interest in the stock) must contain the same elements as a legal gift  those specified above. As well stated in Annotation 96 A.L.R. 383, 384 (1935), "a gift of the equitable or beneficial title must be as complete and effectual in the case of a trust as in the gift of the thing itself in a gift inter vivos. There must be an executed gift of the equitable title, without any reference to its taking effect at some future time." Applying that rule in this State is Bendix v. Hudson County National Bank, 142 N.J. Eq. 487, 490 (E. & A. 1948). See also Frazier v. Hudson, 279 Ky. 334, 130 S.W.2d 809 (Ct. App. 1939); Eschen v. Steers, 10 F.2d 739 (8 Cir. 1926). Cf. Whittingham v. Lighthipe, 46 N.J. Eq. 429, 432-433 (Ch. 1890).
In most respects, the relationship between parents and daughter in this case is more assimilable to that of principal-agent rather than settlor beneficiary-trustee beneficiary. Mrs. Albert's subjection of herself to the detailed direction and control of plaintiffs as to these shares of stock partakes of the agency relationship, but her vestment with title (though nominal) was a trust characteristic. Scott says that in such a case "it is the agency relationship which pre-dominates, and the principles of agency, rather than the principles of trust, are applicable." 1 op cit., § 8, p. 79. As an agency relationship, it was terminable at any time at the will of the principal.
We conclude that plaintiffs are entitled to a declaration revesting in them full ownership of the stock.
Reversed; no costs.