[No. 33041.   Department One.   July 21, 1955.]

CHARLES McKOWN *et al., Respondents,* v. FLOYD DAVIS *et al., Appellants.*[1]

[1]Reported in 285 P. (2d) 1048.

*J. W. Graham,* for appellants.

*Andrew A. Berilla, John E. Cantlon, Paul J. Narigi,* and *Henderson, Carnahan, Thompson & Gordon,* for respondents.

DONWORTH, J.—May the vendee named in an earnest money agreement, who has been unsuccessful in a prior action to rescind that contract on the grounds of fraudulent representations, subsequently maintain an action for specific performance of that contract?

On May 3, 1951, plaintiffs (Charles McKown and Henrietta McKown, his wife) as vendees, and defendants (Floyd Davis and Frances Davis, his wife) as vendors, executed a written contract of sale, denominated "Earnest Money Agreement," wherein "the terms and conditions of this agreement and sale" were set forth in detail, and receipt was acknowledged, by vendors, of two thousand dollars as "earnest money in part payment of the purchase price" of a dairy farm, consisting of certain real and personal property (but not including dairy cattle) situated in Mason county near Shelton.

This contract, prepared by an attorney retained by the real-estate agent, provided in part:

"Total purchase price is Thirty Thousand and no/100ths Dollars ($30,000.00), to be paid as follows: *Upon delivery of policy of title insurance by Seller to Purchaser showing merchantable title,* Purchaser will pay an additional sum of Five Thousand Three Hundred and no/100ths Dollars ($5300.00) in cash to purchaser, and in addition will pay off and satisfy a certain chattel mortgage now in effect covering the above described personal property, in favor of the Elma Feed Co., in the sum of $5000.00; Purchaser further will convey his equity, hereby valued at $2,200.00, to Seller, in certain real property at Kent, Washington, particularly described as follows . . .

"Purchaser further will assume and agree to pay, according to its terms and conditions, a real estate mortgage covering said property hereby purchased, in favor of the Pru-

dential Life Insurance Co. of America, the balance of which is $15,500.00.

"*Sellers agree to furnish and deliver to purchaser as soon as procurable a policy of title insurance* covering the real property hereby agreed to be sold. If title is not insurable and cannot be made insurable within 30 days from issuance of said title policy or first title report, this agreement shall be considered terminated and of no effect, and the earnest money refunded to Purchaser." (Italics ours.)

Without waiting for the receipt of the policy of title insurance, plaintiffs, upon the request of defendants' agent, deposited with this agent (in whose office the transaction was to be closed "within ten days after issuance of title insurance policy") the five thousand three hundred dollars cash payment above mentioned and conveyed to defendants, through this agent, plaintiffs' equity in the Kent realty. Thereupon defendants vacated the farm and notified plaintiffs thereof. On June 4, 1951, plaintiff husband, after having liquidated his holdings in California, moved his family from that state and went into possession of the farm.

A short time after moving to the farm, plaintiffs were advised by a veterinarian that the farm was infested with Bang's disease, and that for their health's sake they should remove their children and vacate the premises. On July 18, 1951, after a consultation with defendants, who were living in Shelton, plaintiffs wrote defendants that they were that day leaving the farm and requested them to meet them at the farm the next day to check the items of personal property which were to be included in the sale. At the time designated, defendant husband was physically present at the farm and took possession of, and responsibility for, the personal property items which plaintiffs left on the farm.

Alleging that the presence of Bang's disease on the farm was inconsistent with the vendors' representation that the farm was a "good A-1 dairy farm," plaintiffs commenced an action in Mason county on September 22, 1951, against defendants to rescind the contract of sale on the ground of fraud. In that action, defendants answered and cross-complained, alleging that plaintiffs, by vacating the premises,

had abandoned the contract and thereby forfeited all rights under the contract. At the conclusion of the trial, the court found (a) that plaintiffs had failed to produce clear, cogent, and convincing evidence in support of their claim of fraud, and (b) that defendants had failed to produce any evidence in support of their cross-complaint. Judgment was entered on October 17, 1952, dismissing both the complaint and the cross-complaint.

On October 28, 1952, defendants conveyed the farm property to other parties, thereby putting it beyond their power to perform their earnest money agreement with plaintiffs. Defendants retained the $9,500 previously paid them by plaintiffs pursuant to that agreement.

On October 29, 1952, plaintiffs wrote to defendants' agent, through whom they had paid the $9,500, as follows:

"As a result of the recent decision by Judge Wright in the action of rescission of an Agreement that we had with you for the purchase of the dairy ranch near Shelton, we, at this time, make demand upon you for the return of the said premises to us, by you, pursuant to the Agreement which we had entered into.

"Under the terms of this Agreement, we are prepared, and do at this time, offer to pay to you the entire balance due and owing to you under the terms of this Agreement. We will do so immediately upon the receipt of a Title Policy covering the aforementioned property.

"Kindly let us hear from you."

On November 19, 1952, plaintiffs commenced the present action in Pierce county, which was later removed to Mason county, seeking specific performance of the same contract involved in the prior action. Defendants answered, setting up as defenses (a) that plaintiffs, in the prior action, had elected their remedy and were bound by that election, that the matter was *res adjudicata*; and (b) that plaintiffs had abandoned the contract and are now precluded from asserting rights under the contract by seeking its specific performance.

Defendants are in this position: They have never procured or delivered to plaintiffs the policy of title insurance mentioned in the contract; in addition to the original earnest

money payment of $2,000, they have obtained from plaintiff the $5,300 cash payment and the $2,200 equity in the Kent property (both of which were payable only after policy of title insurance had been delivered); they have conveyed this interest in the Kent property to their real-estate agent in lieu of commission (and that agent has since deeded it away); and, during the thirty-day period following the entry of judgment in the prior action, they conveyed to a third party the real and personal property which were the subjects of the earnest money agreement with plaintiffs.

At the conclusion of the trial of this cause, the court, after making findings of facts and conclusions of law, entered a "judgment and decree" requiring the defendants, within ninety days, to specifically perform the terms of the contract, with the alternative proviso that, if defendants shall have failed to comply with the terms of the decree within that time, plaintiffs have judgment against the defendants in the sum of nine thousand five hundred dollars, with interest from the date of entry of judgment.

Defendants appeal from this judgment, complaining in assignments of error Nos. 1, 2, 3, and 4 that certain findings entered by the court are contrary to the evidence or not supported by the evidence. The findings complained of read as follows:

"IX. The Court finds that the terms of said Earnest Money Agreement provided that the Sellers agree to furnish and deliver to the Purchasers, as soon as procurable, a Policy of Title Insurance covering the real property agreed to be sold, showing merchantable title. That the Defendants have failed, neglected and refused to furnish and deliver to the Plaintiffs a Policy of Title Insurance showing a merchantable Title or any Title whatsoever.

"X. The Court finds that the Plaintiffs have performed their agreement with the Defendants, and have tendered performance under the terms of said Earnest Money Agreement for the purchase of the real and personal property described therein and are now and at all times mentioned herein were ready, willing and able to perform and pay the balance of the purchase price in accordance with the terms of said Earnest Money Agreement upon delivery to them by

the Defendants of a policy of Title Insurance showing merchantable title.

"XI. The Court finds that the Plaintiffs have demanded of the Defendants that they furnish and deliver a Policy of Title Insurance on the property described in the Earnest Money Agreement . . .

"XV. The Court further finds that the Plaintiffs did not abandon the premises; and that there was an entire failure on the part of the Defendants to prove . . . any of the Affirmative Defenses set forth in the Answer . . ."

Appellants do not assign error to finding No. XII, which reads as follows:

"The Court further finds that the Defendants have failed and refused to comply with the terms of the said Earnest Money Agreement in that they have failed and refused to furnish and deliver a Policy of Title Insurance to the subject premises; and, they have failed and refused to convey the real and personal property described in said Earnest Money Agreement; and, have further refused, in the alternative, to repay to the Plaintiffs the sum of SEVEN THOUSAND THREE HUNDRED DOLLARS ($7,300.00) and the return to the Plaintiffs of the equity in the property at Kent, Washington, of an agreed value of TWO THOUSAND TWO HUNDRED DOLLARS ($2,200.00); and the Defendants thereby have deprived the Plaintiffs of the money paid on the Purchase Price and have also deprived the Plaintiffs of the property described herein to be purchased by them, all of which is contrary to law, justice and good conscience."

There is no conflict in the evidence as to the payments made by respondents to appellants pursuant to the earnest money agreement. The principal conflict is as to whether respondents were shown, or had explained to them by appellants' agent, a preliminary report of the title company issued May 9, 1951. This issue bears on the question whether respondents had waived the provisions in the contract relative to appellants' obligation to deliver to them a policy of title insurance. The trial court saw and heard the parties and their witnesses testify and resolved this and other issues of fact in favor of respondents.

After reading the record in this case and examining the exhibits, we are of the opinion that the evidence adequately supports the findings complained of and does not

preponderate against them. We must, therefore, accept them as verities, and hold that the trial court did not err in making and entering these findings. *McDonald v. Wockner,* 44 Wn. (2d) 261, 267 P. (2d) 97, and *Stimson Mill Co. v. Anacortes Veneer,* 45 Wn. (2d) 561, 276 P. (2d) 590, and cases cited therein.

In support of their contention that respondents have no right to maintain this action, appellants advance two theories: (a) that respondents abandoned the contract when they vacated the premises on July 18, 1951, and (b) their first suit (for rescission) constituted an election of remedies and the judgment therein is *res adjudicata.*

As to the first theory mentioned above, appellants contend that, when respondents vacated the farm on July 18, 1951, they abandoned the contract and thereby forfeited all rights thereunder. In order to determine the validity of this contention, we must first have clearly in mind exactly what the agreement between the parties was and the respective obligations of each party thereunder.

This earnest money agreement provided for the sale of the real and personal property described therein for a total consideration of $30,000, of which $2,000 was paid at the time of its execution and the balance of $28,000 was payable in the following manner:

*Upon delivery of policy of title insurance by seller to purchaser—*
- (a) $5,300 cash to seller; and
- (b) $5,000 payable to Elma Feed Co. in satisfaction of chattel mortgage; and
- (c) $2,200 by conveyance to seller of purchaser's equity in Kent property; and
- (d) $15,500 by assumption of Prudential mortgage on farm.

It is to be noted that the purchaser was not required to pay anything or do anything *until* the title insurance policy was furnished by the seller. The seller agreed to furnish and deliver to the purchaser such policy of title insurance "as soon as procurable."

The testimony shows that the preliminary title report was prepared and received by the vendors' agent on or be-

fore May 14, 1951. The policy has not been delivered to the purchaser yet.

Notwithstanding the plain language of the agreement as to when these four items aggregating $28,000 are payable, to wit, upon delivery of the title policy, appellants argue that respondents breached the contract by not paying or assuming items (b) and (d). On the contrary, appellants (not respondents) were in default under the agreement at all times since its execution. Furthermore, it is undisputed that respondents, at the request of appellants' agent, paid items (a) and (c) long before they were required to do so under the terms of the agreement.

Notwithstanding that the agreement was breached by appellants and not by respondents, appellants seek to justify their keeping $9,500 received from respondents and also the proceeds derived from the sale of the property to third parties.

We have examined the several decisions of this court cited by appellants (the most recent being *Mathews v. Heiser*, 42 Wn. (2d) 326, 255 P. (2d) 366), and cannot find that they arise out of similar agreements. They involve delinquencies by purchasers under executory contracts of sale in which there were forfeiture clauses and time was declared to be of the essence. Such cases can have no bearing on the present case, where the contractual obligations are very different and the purchaser is not in default in any respect.

Nor did respondents abandon the agreement. As stated above, they vacated the farm on July 18, 1951, because they had discovered the presence of Bang's disease. On October 29, 1952, they were ready, able, and willing to perform their obligations under the agreement *if* appellants would perform theirs. They so notified appellants' agent in writing, but appellants chose to ignore their obligations under the agreement and have retained the fruits of the agreed sale ($9,500) plus the fruits of the consummated sale to third parties.

With regard to appellants' second theory (the election of remedies), appellants contend that, at the time of the

commencement of the fraud action, respondents had to elect between *rescinding* or *enforcing* the agreement, and, having elected to rescind it, respondents are now barred from seeking specific performance in this action.

The election available to respondents in the fraud action was between (a) rescission of the contract and the recovery of the consideration paid, or (b) affirmance of the contract with a reduction of the purchase price in an amount equal to the damages found to have been sustained by reason of the fraudulent misrepresentations. 18 Am. Jur. 152, § 32, 160, § 42.

The judgment in the fraud action, in effect, determined that respondents had entered into an enforcible contract, that they were not induced to purchase by fraudulent misrepresentations, and that they were bound by the terms of the contract. The matter of fraud was therefore *res adjudicata*. The election made when that action was commenced merely precludes respondents from later asserting the alternative remedy by commencing a suit for damages on the same evidence to apply in diminution of the purchase price. *Labor Hall Ass'n v. Danielsen,* 24 Wn. (2d) 75, 163 P. (2d) 167, 161 A. L. R. 1079.

Appellants seem to contend that, because respondents once elected to avoid the contract by seeking the equitable relief of rescission (and despite the fact that they were unsuccessful and that the court concluded they were bound by the terms of an enforcible contract), they are forever precluded from resorting to the courts and there seeking relief or asserting rights which are consistent with affirmance of the contract and inconsistent with avoidance of the contract.

We do not follow the logic of appellants' argument. If the present action were based on the alleged fraud upon which the prior action was predicated, we agree that it would abate upon the assertion of the defense of *res adjudicata*. This action has no element of fraud. It is for specific performance of the contract, and its elements generally are merely an enforcible contract, the willingness of one party

to perform, and the unjustified failure or refusal of the other party to perform.

The former action, while it finally determined the respondents' right to avoid the contract on the evidence there presented, did nothing to place beyond the reach of respondents the means of compelling appellants to specifically perform the terms of the contract by which the parties were bound. We do not consider the former action as a bar to this action.

We therefore conclude that the trial court, on the evidence here presented, did not err in finding against appellants on both the theories of abandonment and election of remedies.

The judgment is affirmed.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

