[No. 34846. Department One. April 16, 1959.]

CHARLES MCKOWN et al., Respondents, v. HERBERT DRIVER et al., Appellants.[1]

[1] Reported in 337 P. (2d) 1068.

*Lewis & Correa* and *O'Leary, Meyer & O'Leary,* for appellants.

*Brodie & Fristoe,* for respondents.

Orr, J.—May 3, 1951, Charles and Henrietta McKown, husband and wife (hereinafter referred to as the McKowns), entered into an earnest-money agreement to purchase farm land and certain farm equipment located in Mason county, from Lloyd and Frances Davis, husband and wife, and Charles F. Davis, a single man (hereinafter referred to as the Davises). The McKowns paid the Davises eighty-five hundred dollars in cash and property as down payment. The earnest-money agreement was not recorded in the office of the auditor of Mason county.

July 18, 1951, the McKowns moved off the property and notified the Davises by letter of their election to rescind the contract as evidenced by the earnest-money agreement, as follows:

"This will serve to notify you that we're moving off the ranch & turning it back to you. With the exception of the three implements—namely: disc, harrow & double bottom plow—which the Hess Implement Co. picked up—the rest of the equipment is intact.

"With this notice, we are hereby relinquishing all responsibility of said property & equipment.

"So there won't be any question in your minds, whether all the machinery & equipment is left here—meet me at the ranch at 4:00 P. M. Thursday July 19, 1951, so that we can go through the list together.

"We will be off the premises with our possessions—July 18, 1951."

The Davises, as requested, immediately took possession of both the real and the personal property. A short time thereafter, they leased the premises and equipment to certain tenants.

September 22, 1951, the McKowns commenced an action against the Davises in Mason county, being cause No. 6031, alleging, inter alia, that:

". . . the plaintiffs have been informed and therefore allege upon information and belief that by reason of the contamination and conditions prevailing in, on and about the land, buildings and equipment of said dairy farm the plaintiffs and their minor children by residing, living and making their home therein exposed themselves to grave and

serious danger, namely undulant fever. That by reason and upon the grounds of the false, fraudulent and untrue representations and statements made by the defendants to the plaintiffs, the danger to which the plaintiffs and their children were exposed, plaintiff served notice upon the defendants that *they intended to rescind and did rescind* any and all agreements made by them with the defendants in reference to said dairy farm, as more particularly set forth in the Earnest Money Agreement attached hereto and made a part hereof by reference as Exhibit 'A'; and, in truth and in fact did tender back said dairy farm to the defendants and the possession thereof; and, did demand of the defendants the return of the property and cash heretofore paid by the plaintiffs to the defendants; and that the plaintiffs have incurred expenses resulting from the agreement of the parties hereto and in connection therewith through no fault of the plaintiffs in the sum of $5,870.00.

"Wherefore, plaintiffs pray that the agreement attached to the plaintiff's Complaint and marked Exhibit 'A' be rescinded and held for naught, and that the real estate situated in Kent, Washington, more particularly described in the Earnest Money Agreement be returned to the plaintiffs or in the alternative, if that is not possible, that the defendants be required to pay to the plaintiffs the sum of $2,200.00 being the reasonable agreed value of the plaintiff's interest and equity in the Kent property, more particularly described in said Earnest Money Agreement referred to herein; and that the plaintiffs recover the sum of $5,870.00 from said defendants, individually and the community of each of them composed, with interest thereon at the legal rate, from May 3, 1951, in addition to such other and further expenses as determined by the Court including costs and for such other and further relief as the Court finds just and equitable in the premises." (Italics ours.)

No *lis pendens* was filed in the office of the auditor of Mason county at the time of the commencement of the action.

The Davises denied the allegations of fraud and, by affirmative defense and cross-complaint, prayed for forfeiture of the contract and that the down payment made be allowed them as liquidated damages. The reply denied the affirmative matters pleaded.

The cause was tried to the court, and October 17, 1952, both actions were dismissed for failure of proof.

During this time, Herbert and Virginia Driver, husband and wife (hereinafter referred to as the Drivers), were informed by the tenants residing on the dairy farm that the premises were for sale and that the Davises were the owners. March 15, 1952, the Drivers entered into a contract with the Davises to purchase the property. The contract of sale provided, *inter alia,* that:

"'It is however, further understood and agreed that whereas a certain action is pending in the Superior Court of Mason County brought by one McKown for the recovery of money only, in the approximate sum of $8000.00, that if the said action has not been determined at the time when the final payment hereunder falls due, second parties [the Drivers] may reserve the sum of $8500.00 from said final payment, pending the outcome of said litigation, and if any final judgment shall be awarded the said plaintiff in said cause, the said money so reserved or so much thereof as may be required to satisfy said judgment, shall be applied thereon and the balance, if any, paid to first parties [the Davises].

"If at the time when the balance of this contract falls due, the funds may be deposited in the Shelton Branch of the Seattle First National Bank with instructions as to payment of any judgment which may be had affecting the title to said land, said funds in any event to remain in escrow in said bank until a good and sufficient warranty deed shall be executed and delivered to the bank together with a title policy showing the title to be clear, except for the mortgage now existing against the property."

The attorney who prepared the contract informed the Drivers that the pending action was one for money only and did not involve title to the farm land.

Shortly after the judgment of dismissal in cause No. 6031 was entered, the Drivers paid the purchase price in full. The Davises delivered a warranty deed to them which was recorded October 28, 1952, in the Mason county auditor's office. October 29, 1952, the Puget Sound Title Insurance Company issued to the Drivers a title insurance policy in-

suring the title in them, subject only to the recorded Davis mortgage and taxes.

November 19, 1953, the McKowns started another action against the Davises, placing the venue in Pierce county. In this action, the McKowns alleged they were now ready, able, and willing to tender full payment of the sum due the Davises as provided by their May 3, 1951, earnest-money agreement, and prayed for specific performance of the contract or, in the alternative, for a money judgment against the Davises in the amount of ninety-five hundred dollars. The action was transferred from Pierce county to Mason county and became Mason county cause No. 6546. No *lis pendens* was filed in the office of the auditor of Mason county, nor were the Drivers made parties to the action.

After the issues were joined, the cause was tried to the court. June 25, 1954, judgment was entered directing the Davises to specifically perform the contract by delivery of the property to the McKowns or, they being *unwilling* or *unable* to convey the property within ninety days, the McKowns would have a money judgment in the amount of ninety-five hundred dollars. The judgment was appealed to this court and was affirmed July 21, 1955.

September 29, 1955, the McKowns, in cause No. 6546, obtained an *ex parte* order directed to the Davises to show cause why the money judgment should not be paid to them. October 17, 1955, Davis was adjudicated a bankrupt in a bankruptcy proceeding in the United States district court, western district of Washington, southern division, and was discharged as a bankrupt March 5, 1956. The McKowns abandoned the show-cause proceeding.

February 2, 1956, the McKowns filed the instant proceeding against the Drivers in Mason county, being cause No. 6929. They alleged that they "are ready, able and willing to perform all agreements by them to be performed," and prayed that, upon such performance being effected, the deed to the Drivers be held for naught for the reason that they were not bona fide purchasers of the property, and that the title to the property be quieted in the McKowns.

The Drivers' answer alleged that they were innocent purchasers for value, and affirmatively pleaded laches, estoppel, and *res judicata*. The reply denied the affirmative matter pleaded.

With the issues thus joined, the cause was tried to the court. Judgment was entered quieting title to the property in the McKowns, with certain credits to the Drivers. The Drivers have appealed from that part of the judgment which quieted title in the McKowns, and the McKowns have cross-appealed from the part of the judgment which allowed the Drivers certain credits.

Appellants Driver first contend that the trial court erred in holding, as a matter of law, that the proof of the judgment and decree in cause No. 6546, as affirmed by this court in *McKown v. Davis*, 47 Wn. (2d) 10, 285 P. (2d) 1048 (1955), did not fully adjudicate and terminate the respondents' right to specific performance of the Davis-McKown contract.

The material portions of the decree in cause No. 6546 are as follows:

"IT IS HEREBY CONSIDERED, ORDERED, ADJUDGED AND DECREED that the Plaintiffs, CHARLES McKOWN and HENRIETTA McKOWN, husband and wife, be and they are hereby given, granted and awarded Judgment and Decree against the Defendants, FLOYD DAVIS and FRANCES DAVIS, husband and wife, and the community of them composed, *requiring said Defendants to specifically perform the Agreement* for the sale and conveyance of that certain Real Property situated in Mason County, State of Washington, more particularly described as follows: [Description follows] together with the Personal Property and Equipment more particularly described in the Earnest Money Agreement of the parties hereto dated May 2, 1951, more particularly set forth in Exhibit 'A' of Plaintiffs' Complaint and Plaintiffs' Exhibit '5' filed herein, by *giving* NOTICE, *in writing*, to the Plaintiffs within ten (10) days from the entry of this Judgment, of the *Defendants' intention to faithfully and specifically comply* with this Decree and Judgment, and within 90 days, from the entry of this Judgment and Decree, furnish and deliver to the Plaintiffs a Policy of Title Insurance showing a good and merchantable Title to the above described

premises, together with a good and sufficient Warranty Deed thereto and a Bill of Sale to the personal property and equipment, or credit on the Purchase Price for such Personal Property and Equipment not capable of delivery; PROVIDED FURTHER, that *in the event of failure, neglect, or refusal of the Defendants to give said* NOTICE OF INTENTION and comply with this Judgment and Decree, as herein provided, Plaintiffs, CHARLES MCKOWN and HENRIETTA MCKOWN, husband and wife, *have Judgment against said Defendants,* FLOYD DAVIS and FRANCES DAVIS, husband and wife, and the marital community composed of them, in the sum of NINE THOUSAND FIVE HUNDRED DOLLARS ($9,500.00), together with interest thereon from the 25th day of June, 1954, and together with Costs herein to be taxed." (Italics ours.)

Appellants Driver conceded at the trial of the present cause, and concede on appeal, that: (1) The Davises did not give the notice of "intention to faithfully and specifically comply with this Decree and Judgment" within the ten-day period, or at all; (2) the Davises did not, within ninety days, deliver the bill of sale or deed, or furnish the McKowns with title insurance; and (3) the Davises did fail, neglect, and refuse to comply with the performance portion of the judgment and decree.

Did the judgment in cause No. 6546 order specific performance of the contract only, or did it grant to the Davises the option to specifically perform the contract or have judgment entered against them in the amount of ninety-five hundred dollars?

 The court found that the Davises had conveyed the property involved to the Drivers (who were not parties to the action) more than a year before the action was commenced. Specific performance of the contract therefore could not be ordered. The Davises were given the option, within the time allotted, to reacquire title and deliver the property to the McKowns or, upon their failure so to do, to have a money judgment automatically entered against them for the McKowns in the amount specified.

This court, in considering the appeal of cause No. 6546 in *McKown v. Davis,* 47 Wn. (2d) 10, 13, 285 P. (2d) 1048

(1955), commented in regard to the prior conveyance by the Davises to the Drivers as follows:

"On October 28, 1952, defendants [Davis] conveyed the farm property to other parties, thereby putting it beyond their power to perform their earnest money agreement with plaintiffs [McKown]."

We conclude that the judgment in cause No. 6546, as affirmed by this court in *McKown v. Davis, supra*, terminated the rights of the McKowns to enforce specific performance of the earnest-money agreement as against the Davises.

Appellants contend that the Drivers are in privity with the Davises, so that the bar of the judgment for specific performance against the Davises operates as a bar to the McKowns' alleged cause of action against the Drivers. With this contention, we agree.

One is in privity with a party when he stands in a mutual or successive relationship to the same rights of property. *Watkins v. Siler Logging Co.*, 9 Wn. (2d) 703, 116 P. (2d) 315 (1941), and cited cases. Since the property was acquired by the Drivers directly from the Davises, they were in mutual and successive relationship with reference thereto, and the Drivers therefore were in privity with the Davises. Even though the Drivers were not parties to the proceeding, the judgment operates as a bar equally to them as privies as to the parties to the proceeding. *Watkins v. Siler Logging Co., supra*, and cases cited.

For the reasons stated, we conclude that specific performance of the contract does not lie against appellants Driver, and that the court erred in its judgment that the affirmative defense pleaded did not constitute a bar.

The trial court found that the Drivers had actual knowledge of the Davis-McKown contract and knew of the Davis-McKown relationship with reference to the land in question; that the Drivers therefore were not bona fide purchasers; and that specific performance of the Davis-McKown contract is enforcible against the Drivers. We do not agree with the court's conclusion for the following reasons:

 Respondents are estopped to assert that specific performance is a remedy available to them, for the reason that their bringing of cause No. 6546 and pursuing the cause to final judgment constituted an election of remedies which bars any subsequent action for specific performance, whether the Drivers had actual knowledge of the existence of the Davis-McKown contract or not.

 When an executory contract for the sale of real estate has been breached by the seller, the purchaser has the option to institute an action for specific performance of the contract or for damages resulting from the breach, or to seek only rescission of the contract by returning possession of the property contracted for and recovering only the amount of his down payment.

 One is bound by an election of remedies when all of the three essential conditions are present: (1) the existence of two or more remedies at the time of the election; (2) inconsistency between such remedies; and (3) a choice of one of them. *Willis T. Batcheller, Inc. v. Welden Constr. Co.*, 9 Wn. (2d) 392, 403, 115 P. (2d) 696 (1941); see, also, *In re Wilson's Estate*, 50 Wn. (2d) 840, 849, 315 P. (2d) 287 (1957); *Jordan v. Peek*, 103 Wash. 94, 100, 173 Pac. 726 (1918); *Lord v. Wapato Irr. Co.*, 81 Wash. 561, 583, 142 Pac. 1172 (1914). The prosecution to final judgment of any one of the remedies constitutes a bar to the others. *Stewart & Holmes Drug Co. v. Reed*, 74 Wash. 401, 405, 133 Pac. 577 (1913).

 In cause No. 6546, the McKowns prayed for specific performance of the contract or, in the alternative, for a money judgment to recover the amount of their down payment. The court granted them the alternative relief they had requested. They prosecuted the remedy they had selected to final judgment. Applying the above rules of law to the facts in the instant proceeding, there were two or more remedies available to the McKowns at the time they commenced cause No. 6546; the remedies, although inconsistent, were pleaded in the alternative; the court's choice became the McKowns' choice. All the essential elements

of election of remedies are here present, thus constituting a bar to the maintenance of the instant proceeding.

 Aside from the pleadings and judgment establishing an election of remedies, the McKowns' conduct both before and after judgment in cause No. 6546 was consistent with such an election:

July 18, 1951, they wrote, ". . . we are hereby relinquishing all responsibility of said property & equipment."

September 22, 1951, their complaint in cause No. 6031 stated that they intended to relinquish and did relinquish all interest in and to the property.

October 28, 1952, the Drivers' deed to the property they sought to acquire by purchase was recorded.

November 19, 1953, the McKowns (although they are chargeable with knowledge of the transfer of the property to the Drivers and knew that the Drivers had been in actual possession of it for more than one and one-half years) did not make the Drivers parties to cause No. 6546. If they in good faith sought specific performance, the Drivers were indispensable parties defendant.

June 25, 1954, specific performance was granted conditionally, the condition precedent to be performed at the option of the Davises. When the time fixed for the exercise of the option expired, the remedy of a money judgment against the Davises in lieu of specific performance became final.

October 17, 1955, the McKowns attempted to collect the money judgment.

Respondents' conduct for the above period of more than four years was entirely consistent with the enforcement of the remedy they had selected. It was only when their efforts in the collection of the money judgment forced the Davises into bankruptcy that they decided to turn their attention to the property itself. To regain possession of it, the respondents requested the court to grant them the equitable relief of specific performance of the contract and delivery of a deed as therein provided. The respondents' previous election of remedies in this regard constitutes a

bar upon the court from granting the relief therein re-quested.

For the reasons stated, we do not reach the remaining assignments of error.

The judgment granting the respondents the equitable relief prayed for is reversed and the cause remanded, with instructions to enter judgment of dismissal.

WEAVER, C. J., MALLERY, DONWORTH, and HUNTER, JJ., concur.

June 11, 1959. Petition for rehearing denied.

[1]Reported in 337 P. (2d) 1059.