[No. 38505.    Department One.    January 5, 1967.]

ANNETTE SUPPA OMAN, *Appellant,* v. DONALD H. YATES, *as Executor, et al., Respondents.**

*Reported in 422 P.2d 489.

*Levinson & Friedman,* for appellant.

*Riddell, Williams, Voorhees, Ivie & Bullitt,* for respondent Yates.

SOULE, J. †—On May 9, 1964, George Rheims, Annette Suppa Oman, and John and Noelene Sunday, husband and wife, entered into an unusual tripartite earnest money agreement which was prepared by the then attorney for Mrs. Oman, the plaintiff-appellant herein.

By its terms, the defendants Sunday, as sellers, agreed to convey a house to Mrs. Oman, designated as purchaser, for the sum of $37,500. Rheims signed the agreement as "guarantor" because he was the person who was to make the payment. No consideration moved from Mrs. Oman to either Rheims or the Sundays.

The earnest money agreement provided, in part:

All cash on closing including the above earnest money of $3,750.
It is understood the funds for purchase will be the responsibility of George L. Rheims, who has paid the above earnest money and will pay the balance due.
All documents bearing the name of the purchaser will show Annette Suppa only as purchaser.

The closing date was fixed as not later than July 15, 1964.

All parties agree that this is a third-party-donee-beneficiary contract; that Mrs. Oman is the third-party beneficiary, Rheims the promisee, and Sundays the promisors.

It differs from the classic third-party beneficiary contract in that Mrs. Oman is signatory to the document, but we do not deem this difference to be significant.

In the trial below and in the presentation of argument on appeal frequent references have been made to principles pertaining to inter vivos gifts. For this reason we will treat of them in this opinion, but the resolution of the present

---

†Judge Soule is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

controversy is properly to be found within the area of contract law, and not that of gift of tangible property.

The trial court found that on May 9, 1964, Rheims had the donative intent to effect a gift and for the purpose of this decision we will assume that his intent never changed. On the same date Rheims delivered a signed copy of the earnest money agreement to the plaintiff and signed a check for the earnest money to Mrs. Oman's attorney and delivered it to him. The attorney was to handle the actual transfer of funds to the Sundays through his trust account. The check was returned NSF and has never been paid. As a consequence the Sundays did not receive the earnest money for which they bargained.

Shortly thereafter Rheims became ill and, on June 11, 1964, died leaving an estate subject to administration in King County. Defendant Donald Yates was appointed executor.

There has never been any tender of either the earnest money or the purchase price to the Sundays.

Within a few days of the death of Rheims the plaintiff filed a claim against the estate demanding specific performance of the agreement and upon rejection of the claim on June 30, filed suit for specific performance both against the estate and the Sundays. The estate first answered by a general denial. Sundays did not answer at this time.

On December 10, 1964, plaintiff served a motion for summary judgment on the estate. On December 11, Sundays served a claim on the estate asking for the sum of $3,750. The claim contained the following statement:

> May 9, 1964. By reason of a check given as earnest money pursuant to an earnest money receipt dated May 9, 1964, a copy of which is attached and by this reference made a part hereof, concerning which earnest money receipt and agreement *the deceased defaulted.* Or in the alternative for damages in the amount of $3,750 *by reason of the non-performance by the deceased* of the contract, a copy of which is attached hereto and by this reference made a part hereof. *This claim is without prejudice to a possible claim for specific performance to the extent said claim is available to claimants.* (Italics ours.)

That the Sundays had the right to seek specific performance, should they elect to do so, is clear. They were not confined to the remedy of damages. *Tombari v. Griepp*, 55 Wn.2d 771, 350 P.2d 452 (1960).

Thereafter, on December 23, 1964, and still without answering, Sundays filed a brief in the summary judgment proceeding in which their stated position was:

> That defendants Sunday now are ready, willing, and able to perform in accordance with the earnest money receipt and agreement executed by defendants Sunday and defendant George L. Rheims under date of May 9, 1964, *and are not resisting any decree requiring the decendent's estate of Rheims to specifically perform said earnest money receipt and agreement.* (Italics ours.)

In the meantime, on December 18, 1964, the estate had filed an amended answer setting up several defenses including those of incompleted gift and the fact that as between Rheims and Sundays the agreement was unenforceable for lack of consideration.

The summary judgment hearing was continued to permit Sundays to answer. Between the time of filing their brief and their answer, Sundays evidently had a change of heart, because in their answer filed February 2, 1965, rather than ask for specific performance they set up as an affirmative defense the fact that Rheims was in default both as to the original earnest money and as to the payment of the total purchase price. They also set forth their filing of the claim against the estate for the sum of $3,750, and its allowance and payment by the estate as liquidated damages for the default and prayed that plaintiff's complaint be dismissed.

The settlement thus pleaded had been effected January 7, 1965, without the knowledge of the plaintiff Oman.

The case proceeded to trial against Sundays and the Rheims' estate and upon findings of fact, none of which are challenged, the trial judge made conclusions of law as follows:

I

That plaintiff has no right to compel specific performance of the May 9, 1964 agreement as against defendants

Sunday, since there was no timely tender of the purchase price and in fact there has been no tender of it at all.

## II

In entering into the settlement agreement dated January 7, 1965 defendants Sunday were within their legal rights in electing between the remedies available to them under the terms of the agreement of May 9, 1964.

## III

That there was no completed gift from George L. Rheims to plaintiff, since there was no effective delivery of the subject matter of the gift. The intended gift was never completed.

## IV

That the plaintiff as a donee beneficiary of the May 9, 1964 contract, has no right of action to compel the "promisee" (the Rheims estate in this case) to pay the $37,500.00.

Judgment was entered on behalf of all respondents dismissing the complaint and the plaintiff appealed.

■ We agree that as a gift effort the gift was not complete. The requirements for a completed gift are (1) a donative intent; (2) delivery of the property must be as perfect as the nature of the property and the circumstances and surroundings will reasonably permit. *In re Gallinger's Estate*, 31 Wn.2d 823, 199 P.2d 575 (1948).

This case presents no problem with donative intent. To the extent that the physical gift concept can properly be considered, the problem is to identify the subject matter of the gift and to determine whether or not there was delivery. Plaintiff concedes that the subject was not the house since Rheims did not yet have it to give, nor was it the money which would represent the purchase price of the house. Plaintiff identifies the object which is the subject of the gift in her brief, "What he did give the appellant was a *binding contract* in which he had obligated himself to the Sundays to pay them $37,500.00 for the benefit of the plaintiff." (Italics ours.)

■ As between plaintiff and Rheims the instrument did not constitute a contract because it lacked consideration. "Owing to the absence of consideration, a gift inter vivos

does not come within the legal definition of a contract, and, while still unexecuted, confers no rights upon the donee." 24 Am. Jur. *Gifts* § 11 (1939).

As a contract with Sundays it was totally executory in the sense that Rheims promised to do acts contemporaneously and in the future. We fail to see how the manual delivery of the document to plaintiff did anything to improve the quality of her right against Rheims.[1] It put her in possession of good evidence of her benefactor's gratuitous promise to make a gift, but nonetheless, it was only a promise and he did not perform. A mere promise to make a gift is not enforceable. *Frank v. Gaylord,* 119 N.J.Eq. 427, 182 Atl. 614 (1936); *Banner Window Glass Co. v. Barriat,* 85 W.Va. 750, 102 S.E. 726 (1920); *In re Allhouse's Estate,* 304 Pa. 481, 156 Atl. 69, 96 A.L.R. 379 (1931); 24 Am. Jur. *Gifts* § 112 (1939).

Plaintiff asserts a right to require specific performance against the donor-promisee or his estate. Plaintiff has cited no cases, nor has our independent research disclosed any authority upholding such a right. *Vikingstad v. Baggott,* 46 Wn.2d 494, 282 P.2d 824 (1955), recognizes the right against the *promisor,* not, as plaintiff's brief implies, against the promisee.

A consideration of the fundamental principles of a gift perhaps explains why such cases do not exist.

As we before noted, until the donor has done everything reasonably necessary to transfer the subject of the gift, the gift is incomplete, and since there is no consideration flowing from the donee to the donor, the donor is under no duty

---

[1] 3 Williston, Contracts §§ 439 and 440 (1960), discusses the problems of gifts by delivery of a document evidencing contract rights, and concludes that the majority and better rule is that the possibility of making gift by delivery of the writing embodying those rights is and should be confined to cases where the obligor can and will demand the surrender of the document before making payment or otherwise performing, for in such cases, possession of the document has the same practical effect as possession of ordinary chattel property.

We note that the earnest money agreement is not a writing of that quality.

to complete his announced intention. There being no duty in the donor, there is nothing for the court to enforce.

In the gift context the very assertion of a claim for specific performance against the donor-promisee or his estate negates the concept that the donor has done all that is necessary to complete the gift. If he had, there would have been no need for the demand.

The present case is quite distinguishable from *Speelman v. Pascal*, 10 N.Y.2d 313, 178 N.E.2d 723 (1961), in which the donor, at the time he wrote the letter of assignment, already owned the rights which were the subject of the assignment. Though the value of his rights became enhanced thereafter, his letter of assignment did not create the asset, but rather served to divide and transfer a fractional share of it. Moreover, the action was not one to compel specific performance by the estate of the promisee, but rather one to compel the estate to account for the proceeds. The question of whether or not the gift was completed was considered, but the case is not authority for the proposition that an action for specific performance can be maintained by the beneficiary against the estate of the promisee.

We hold that an action to require the performance of a gift promise cannot be maintained by a third-party beneficiary against the benefactor-promisee or his estate.[2]

Plaintiff's right to ask specific performance of the promisors (Sundays) is clear. *Vikingstad v. Baggot, supra;* Restatement, Contracts § 138. She may enforce contract as if she were the promisee. 4 Corbin, Contracts § 782 (1951).

However, plaintiff, as donee-beneficiary, took the contract subject to such defenses as Sundays might care to assert by reason of Rheims' default. *Kinne v. Lampson,* 58 Wn.2d 563, 364 P.2d 510 (1961). Restatement, Contracts § 140 states the rule:

---

[2]"If a gift is attempted in a mode which fails for want of compliance with some indispensable rule of law, it will not be carried into effect in another mode to which the rule may not be essential." 38 C.J.S. *Gifts* § 62 (1943).

> There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and promisee; and if a contract is conditional, voidable, or *unenforceable at the time of its formation,* or subsequently ceases to be binding in whole or in part *because of* impossibility, illegality or *the present or prospective failure of the promisee to perform a return promise which was the consideration for the promisor's promise,* the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitation. (Italics ours.)

Accord: 2 Williston, Contracts § 394 (3d ed. 1959).

Thus, the earnest money receipt was not quite the binding contract that plaintiff asserts. It was not binding on Sundays because from its inception Rheims was in default. His earnest money check was not good and he never made it good. From the outset Sundays had a defense if they cared to exercise it. The fact that Sundays could have elected to hold Rheims does not assist plaintiff. By the contract Rheims created conditional rights only, rights conditioned on his contemporaneous and future performance. He failed to perform the contemporaneous act required of him and was prevented by death from performing the future one.

The plaintiff assigns error to the conclusion of the trial court that Sundays had the right to settle the case with the Rheims' estate and thus deprived the plaintiff of her right of specific performance against the Sundays. Plaintiff argues that equitable principles and considerations of fair play should prevent other parties from settling to the plaintiff's detriment.

■ It is undoubtedly true that once a contract has been completely formed for the benefit of a third party the promisor and promisee may not get together and mutually rescind, unless the contract, by its terms, reserves the right so to do; nor may the promisee (Rheims) unilaterally revoke. 4 Corbin, Contracts § 816 (1951).

If Sundays' right to resist plaintiff's prayer for specific performance was founded only on a settlement made as a

result of mutual rescission, plaintiff's point would be well taken, but the Sundays' position is stronger than that.

Settlement or no, Sundays had a right to defend because promisee Rheims failed to perform a condition, *i.e.*, pay the initial earnest money, let alone the purchase price.

The power of the promisee to discharge the contract by not performing a condition is discussed in 4 Corbin, Contracts § 816 (1951), p. 261:

> There is one case in which the promisee and the promisor certainly have power of rescission even after the third party has expressed assent to the contract and even acted in reliance upon it. *If the promise is conditional upon some performance by the promisee, the non-fulfilment of this condition will prevent the beneficiary from having an enforceable right.* In few, if any, cases is the promisee under a duty to the third party to fulfil the condition. In such a case, therefore, the rescission by the contracting parties also involves the non-fulfilment of the condition precedent and the result is that the beneficiary has no enforceable right. This result would better be explained on the ground that the third party's right was conditional rather than upon the ground that it has been destroyed by a rescission. (Italics ours.)

It follows that Sundays did not need to settle with the Rheims' estate in order to defend against the plaintiff on the ground of failure of consideration, although that settlement may well have been a factor in their determination to assert it.

If Sundays had chosen to demand specific performance from the Rheims' estate the plaintiff would have been entitled to the property, but since the Sundays chose, for reasons of their own, to assert their defense and to seek their remedy in damages; plaintiff's right to the property necessarily must fail. Rheims was under no duty to the plaintiff to fulfill the condition and since the plaintiff had no investment at stake we fail to see how any equitable consideration can be asserted.

Plaintiff urges that the Sundays made a binding election to seek specific performance when, in their brief, filed in connection with the motion for summary judgment, they

stated that they were willing to perform and were not resisting any decree requiring specific performance by the Rheims' estate.

■ From *McKown v. Driver*, 54 Wn.2d 46, 55, 337 P.2d 1068 (1959), plaintiff cited the following:

> One is bound by an election of remedies when all of the three essential conditions are present: (1) the existence of two or more remedies at the time of the election; (2) inconsistency between such remedies; and (3) a choice of one of them.

In the very next sentence this court said, "The prosecution to final judgment of any one of the remedies constitutes a bar to the others."

The holding in the *McKown* case was just that, prosecution of one remedy to judgment bars the right to pursue another.

The statement in the brief was not even a pleading and amounted to a statement of nonresistance to the plaintiff's complaint. It did not indicate one way or the other the Sundays' demand in their relation to the Rheims' promise to them and even if it had, short of pursuing that remedy to judgment, we see no reason why the Sundays could not change their views in the midst of the lawsuit. Considerations of business prudence might well indicate that they take a lesser sum as liquidated damages and be done with the whole affair. We hold that there was no election.

What we have said renders it unnecessary for us to discuss whether or not certain testimony by Donald Yates was admissible. It was offered to prove that George Rheims changed his mind before he died. We do not consider this material because, in any event, he was in default. This default presented a defense to the Sundays. They elected to use it. This left Mrs. Oman without recourse.

The judgment is affirmed.

ROSELLINI, C. J., OTT, HUNTER, and HALE, JJ., concur.

March 17, 1967. Petition for rehearing denied.