[No. 25397-2-I. Division One. August 19, 1991.]

VACOVA COMPANY, ET AL, *Respondents,* v. GENE FARRELL, ET AL, *Appellants.*

*Michael M. Hanis,* for appellants.

*Charles B. Allen,* for respondents.

KENNEDY, J. — Respondent Vacova Company, a Washington general partnership, brought this action below for rescission of a vacant land purchase and sale agreement and for declaratory judgment that the contract was terminated when appellant Gene Farrell, as purchaser, failed to timely pay the first installment of the earnest money due by the terms of the contract. Mr. Farrell counterclaimed for specific performance and for declaratory judgment determining the continued validity of the contract. Vacova moved for and was awarded summary judgment terminating the contract and dismissing Mr. Farrell's counterclaim. Mr. Farrell appeals, assigning error to the entry of the order of summary judgment. We affirm.

## UNDISPUTED FACTS

The following facts are undisputed. In early February of 1989 Kris Gratrix, Robert Westover and another Vacova partner met with Gene Farrell and David Hopkins to discuss a possible purchase by Mr. Farrell of 20 building lots owned and being developed for sale by Vacova. The engineering design plans necessary to obtain preconstruction approval of the plat improvements had been sub-

mitted to King County for review in January of 1989. Mr. Farrell is a builder of single-family homes. David Hopkins, who is a real estate agent working for The Heller Company Realtors, was at all relevant times serving as Mr. Farrell's agent. Kris Gratrix is Vacova's managing partner. Mr. Westover is a licensed real estate broker.

In early March of 1989 Mr. Hopkins called Mr. Westover and stated that Mr. Farrell was ready to make a very attractive offer to purchase the property. A meeting was scheduled for March 14, 1989, a Tuesday. On that day Mr. Gratrix, Mr. Westover and another Vacova partner went to the offices of The Heller Company and met with Messrs. Hopkins and Farrell. Over a period of some 2 hours a verbal agreement was reached whereby Mr. Farrell would purchase the 20 building lots for $1,150,000. The terms were all cash to seller at closing, inclusive of $60,000 earnest money to be paid in three installments. Closing was to be 30 days following recording of the final plat. The only contingency was the recording of the final plat with King County. The parties shared the realistic expectation that the county review of the engineering design plans would require several months and that the construction of the subdivision improvements would require several additional months, so that recording of the final plat and closing of the sale would necessarily be delayed.

After the verbal agreement was reached, and while all the parties were still present at the offices of The Heller Company, Mr. Hopkins prepared a vacant land purchase and sale agreement, utilizing Puget Sound Multiple Listing Association Form 25. That form contains a printed clause which reads: "PERFORMANCE. Time is of the essence of this agreement." Mr. Westover prepared two attachments to the contract, one of which set forth the earnest money to be paid. That clause read as follows:

1. EARNEST MONEY. Earnest money shall be $60,000, payable $10,000 in cash at time of this agreement, an additional $10,000 at time of King County approval of engineering for

the plat improvements and an additional $40,000 not later than 10 days after final approval of plat improvements and recording of the plat by King County. Said earnest money shall be deposited into an interest bearing trust account with The Heller Co.. Said earnest money shall be non-refundable except in the event of Seller's failure to meet the terms of this agreement and shall be released to Seller, together with accrued interest, as liquidated damages upon Purchaser's default.

Also included in the attachments prepared by Mr. Westover were the following provisions:

> 3. INFORMATION TO BE PROVIDED BY SELLER.
> Seller agrees to provide available information pertaining to the subject property to Purchaser not later than 5 days after acceptance of this agreement by all principals. Said information shall include soil logs, engineering drawings and calculations, hearing examiner's report, and other data which Purchaser may request. It is understood that Seller shall not be required to produce an[y] new data for the Purchaser, and that the above data is that which is produced in the obtaining of plat approvals and design of plat improvements.

> 16. Purchaser shall be allowed to meet with engineer to review and approval [sic] design details. Additional costs to Seller resulting from Purchaser's change in requirements shall be paid by Purchaser. Additional charges by engineer for such reviews shall be paid by Purchaser.

Upon completion of the contract and attachments, the parties reviewed the documents. The three Vacova partners then signed as seller and Mr. Farrell signed as purchaser. Mr. Hopkins signed as agent for The Heller Company (Mr. Westover's real estate agency was designated as listing agent and the seller agreed to pay a 4 percent commission to The Heller Company and a 2.5 percent commission to Mr. Westover's employer).

While the parties were in the process of signing the documents, Mr. Hopkins stated that Mr. Farrell did not have the $10,000 with him which the contract required to be paid "at the time of this agreement," that is, immediately upon signing by all of the parties then present. Mr. Hopkins explained that Mr. Farrell would need 3 days (*i.e.*, to Friday, March 17, 1989) to transfer funds in order

to pay the first installment of the earnest money. Following discussion, and with Vacova's verbal consent, Mr. Hopkins prepared an earnest money promissory note which Mr. Farrell signed. The note was made payable to The Heller Company for the sum of $10,000 to be paid

> within three days following notice to Buyer of Seller's acceptance of Buyer's offer.

> This note is signed as the earnest money for a real estate Purchase and Sale Agreement between the Buyer and Vacova ("Seller") dated March 14, 1989, and is referred to therein.

The note was prepared on Puget Sound Multiple Listing Association Form 31. The contract was not amended to make reference to the note, and the earnest money provisions remained as first written.[1]

Mr. Farrell did not pay the note on Friday, March 17, 1989. On that day and again on Monday, March 20, Mr. Westover called The Heller Company to inquire if the $10,000 had been paid, and he was told the money had not been paid. On Tuesday, March 21, 1989, Mr. Westover delivered a letter to The Heller Company with an extra copy for Mr. Farrell, giving notice that

> Vacova Company has rescinded the Sales Agreement dated March 14, 1989, due to the breach of agreement in [Mr. Farrell's] failure to comply with the cash requirement as stated in the [earnest money] Addendum.

In response to that letter, and also on March 21, 1989, Mr. Hopkins wrote the following to Mr. Westover:

> Dear Bob:

> At the time the subject Purchase and Sales Agreement was signed you stated that you would "run over to your office and pickup [sic] the engineering".

---

[1]Although they are not included with the record on appeal, Mr. Farrell's affidavit indicates that promissory notes were also signed for the other two earnest money installments. Respondent's brief contains the statement that none of the promissory notes contained a provision for interest, before or after any default. The note which is included with the record on appeal contains a standard clause for payment of attorney fees, court costs and collection costs in the event the note were to be placed in the hands of an attorney for collection or if suit were to be brought for collection.

Due to the length of our meeting on March 14 you where [*sic*] pressed for time as you had a "Brokers Open" and you did not have time to get the engineering that was prommised [*sic*].

All of the parties of the meeting where [*sic*] aware that I was leaving town for a few days and did not show any concern over the fact that I would not be available untill [*sic*] Tuesday (the 21st) to complete any further communication needed between the parties. At this time the Buyer has communicated with me that it is his desire to complete the transaction in a business like [*sic*] manor [*sic*]. He is prepared to tender his Earnest Money promply [*sic*].

[Signed] Dave Hopkins

On March 21, 1989, Mr. Farrell purchased a cashier's check for $5,000 payable to The Heller Company upon which were typed the following words in the space for identification of the remitter: "Gene Farrell - $5000 E.M. - Balance of $5000 upon 3 day review of engineering on plat of Eastwood Park." The record on appeal is unclear as to when The Heller Company received the check, when Vacova received notice of The Heller Company's receipt of the check, and when The Heller Company deposited the check. The record does reflect that on April 3, 1989, Mr. Farrell sent Vacova's attorney a copy of the check, in response to a letter from the attorney reiterating Vacova's position that the contract was terminated. In his handwritten response to Vacova's attorney, Mr. Farrell stated that the deal could move forward as soon as he could review the engineering of Eastwood Park.

On May 4, 1989, Vacova filed suit for rescission in superior court. The lawsuit was served on Mr. Farrell on May 15, 1989. In the meantime, and on May 9, 1989, Mr. Farrell paid an additional $5,000 to The Heller Company's trust account. On September 19, 1989, Mr. Farrell paid $10,000 into the said trust account, alleging in his affidavit in opposition to the summary judgment motion that he made the second earnest money installment upon belatedly learning that the County had

approved the engineering for the plat improvements. The County approval occurred on June 14, 1989.

The summary judgment proceedings were heard in November of 1989, and the order granting Vacova's motion was entered on December 4, 1989.[2]

## DISPUTED ISSUES

Mr. Farrell alleges that immediately after the parties executed the contract on March 14, 1989, and before they left the offices of The Heller Company, they entered into certain verbal agreements in direct contradiction of the terms of the written agreement. The alleged verbal agreements may be summarized as follows: (1) that payment of the 3-day note was deferred from March 17, 1989, to March 21, 1989 — the day Mr. Hopkins was due to return from a trip; (2) that the 3-day note was accepted "as payment" of the first $10,000 earnest money installment, rather than as evidence of an obligation to pay cash; (3) that delivery of the engineering documents referred to in paragraph 3 of one of the attachments to the contract (due 5 days after acceptance of the agreements, *i.e.*, by Sunday, March 19, 1989) was made a condition precedent to the payment of the 3-day note. Vacova denies that any such verbal agreements were made.

Vacova alleges that Mr. Westover "explicitly informed Farrell" that there was no deal if the 3-day note were not paid in 3 days. Mr. Farrell denies that any such statement was made, and argues that since closing was expected to be at least 6 months away, there was no urgency, and no

---

[2]In January of 1990 an agreed order was entered in King County Superior Court authorizing Vacova to sell the subject property free of any claims of Mr. Farrell, unless Mr. Farrell should file a supersedeas bond. No bond was filed and the property was sold in February of 1990. Vacova initially contended that this appeal became moot when the property was sold, since Mr. Farrell sought only specific performance in his counterclaim. The mootness claim was abandoned by Vacova at oral argument, however, after Mr. Farrell complied with an order of this court to reply to the mootness issue. Mr. Farrell was able to demonstrate that his counterclaim below was sufficient to preserve a claim for damages under circumstances which make specific performance impossible. Accordingly, this court will decide this appeal on its merits.

reason for hurry. Vacova counters this argument with a claim that Mr. Farrell knew from the start, back in February of 1989, that Vacova required a substantial earnest money deposit in order to be reassured that it was dealing with a financially responsible purchaser who could and would pay all cash at closing. Mr. Farrell denies that any such requirements were ever communicated, argues that he is financially responsible in any event, and argues that by the time of the hearing on summary judgment, in November of 1989, Vacova had exactly what it had bargained for to that stage of the contract: $20,000 in the trust account at The Heller Company. (The remaining $40,000 of earnest money was not due until after final plat approval, which had not occurred by the time of the summary judgment proceeding.)

## ISSUE

■ The record on appeal establishes that Vacova met its initial burden of demonstrating that there are no genuine issues of material fact which would justify a trial. The burden to show that there are indeed genuine issues of material fact thus shifted to Mr. Farrell. The dispositive issue in this appeal is whether Mr. Farrell was successful in his effort to set forth *such facts as would be admissible into evidence at trial,* as required by CR 56(e), in order to defeat the motion for summary judgment. We find from our independent analysis of the record that the affidavits presented by Mr. Farrell consist largely of conclusory allegations and argumentative assertions as to the existence of the alleged oral agreements. To the extent that Mr. Farrell's affidavits do contain allegation of facts evidentiary in nature, that is, information as to what took place, an act, an incident, a statement, a reality as distinguished from supposition or opinion, such factual allegations are either immaterial or inadmissible as evidence at trial or both. Accordingly we must hold that Mr. Farrell did not meet his burden of demonstrating genuine issues of material fact.

## DISCUSSION

■ Summary judgment shall be rendered if there is no genuine issue as to any material fact. CR 56(e). A material fact is one upon which the outcome of the litigation depends, in whole or in part. *Riste v. Eastern Wash. Bible Camp, Inc.*, 25 Wn. App. 299, 303, 605 P.2d 1294 (1980). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Stringfellow v. Stringfellow*, 53 Wn.2d 639, 641, 335 P.2d 825 (1959). Unsupported argumentative assertions are not sufficient to defeat summary judgment. *Blakely v. Housing Auth.*, 8 Wn. App. 204, 210, 505 P.2d 151, *review denied*, 82 Wn.2d 1003 (1973).

> Affidavits submitted in support of, or in response to, a motion for summary judgment must set forth such facts as would be admissible in evidence. CR 56(e). An affidavit does not raise a genuine issue for trial unless it sets forth facts evidentiary in nature, *i.e.*, information as to "what took place, an act, an incident, a reality as distinguished from supposition or opinion." *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988). Ultimate facts, conclusions of fact, or conclusory statements of fact are insufficient to raise a question of fact. *Grimwood*, at 359-60.

*Curran v. Marysville*, 53 Wn. App. 358, 367, 766 P.2d 1141, *review denied*, 112 Wn.2d 1020 (1989).

■ Inadmissible evidence is surplusage which cannot support or defeat a motion for summary judgment. *Henry v. St. Regis Paper Co.*, 55 Wn.2d 148, 346 P.2d 692 (1959).

> The parol evidence rule, as traditionally stated in Washington, provides:
>> [P]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake.
>
> *Buyken v. Ertner*, 33 Wn.2d 334, 341, 205 P.2d 628 (1949). It is not a rule of evidence but one of substantive law. *Barber v. Rochester*, 52 Wn.2d 691, 696, 328 P.2d 711 (1958). Thus, prior or contemporaneous negotiations and agreements are said to merge in the final, written contract, and any evidence of these, even if admitted without objection, is rendered incompetent and immaterial by operation of the rule.

*Fleetham v. Schneekloth*, 52 Wn.2d 176, 179, 324 P.2d 429 (1958).

*Emrich v. Connell*, 105 Wn.2d 551, 555-56, 716 P.2d 863 (1986). *See also Berg v. Hudesman*, 115 Wn.2d 657, 670, 801 P.2d 222 (1990).[3]

■ The parol evidence rule is applicable only to writings intended by the parties as an integration of their agreement, that is, a final expression of the terms of the agreement. *Berg*, at 670. Mr. Farrell does not explicitly contend that the contract in this case is not integrated. To the extent that his arguments may contain an implicit argument that the contract is not integrated, however, or only partially integrated, the terms not included in the writing may be proved by extrinsic evidence *provided that the additional terms are not inconsistent with the written terms. Emrich*, at 556; *Berg*, at 670.

While Vacova agrees that the contract was amended to provide for a 3-day promissory note in place of the $10,000 cash payment otherwise payable on March 14, 1989, Mr. Farrell provides conclusory allegations and argumentative assertions which (to the extent they might be properly supported by specific allegations of fact) are in direct contradiction of the written terms of the contract.

The written contract, inclusive of the contemporaneously executed promissory note, requires a cash payment of $10,000 in 3 days, by March 17, 1989. Mr. Farrell asserts that 3 days didn't mean 3 days, but rather meant no sooner than March 21, 1989, a period of 7 days. Of course, Mr. Farrell did not pay the note on March 21, and it was not until May 9, 1989, that Mr. Farrell fully paid the first $10,000 earnest money installment. Quite aside from the parol evidence rule, the alleged agreement that

---

[3]The *Berg* decision had not yet come down when this case was argued to the trial court, nor when the parties' respective briefs were filed. However, it is appropriate for this court to consider *Berg*. We may sustain the trial court's judgment upon any legal theory established and supported by the record, even if such was not relied upon by the trial court. *Sprague v. Sumitomo Forestry Co.*, 104 Wn.2d 751, 709 P.2d 1200 (1985); *Wendle v. Farrow*, 102 Wn.2d 380, 686 P.2d 480 (1984).

the note wasn't due until March 21 is immaterial, since the note wasn't paid on March 21.

The written contact does not make the payment of the first $10,000 conditional on the receipt by Mr. Farrell of the engineering reports. To the contrary, by the terms of the contract the note was payable on March 17 and the engineering reports were not due until March 19, 2 days after the due date for the $10,000 payment. The assertion that the delivery of the engineering reports was verbally agreed to be a condition precedent to the note becoming payable thus directly contradicts the written terms of the contract. To the extent that Mr. Farrell may have presented specific facts to support this allegation, such evidence is inadmissible under the parol evidence rule.

Mr. Farrell also argues that the 3-day note was accepted "as payment" of the first $10,000 earnest money installment, rather than as evidence of an obligation to pay cash in 3 days. The form used for the note does contain a preprinted clause which states that "[t]his note is signed as the earnest money for a real estate Purchase and Sale Agreement . . .". Both parties rely on the case of *Green River Vly. Found., Inc. v. Foster*, 78 Wn.2d 245, 473 P.2d 844 (1970). Mr. Farrell argues that *Green River* is not a summary judgment holding, but rather one following a trial in which evidentiary issues and factual determinations were key and that the case stands for the proposition that the legal effect of contracts tied to promissory notes depends on the intent of the parties to the transaction — a disputed factual issue in this case, and one which requires a trial. Vacova argues that *Green River* dictates the result in this case and requires that the trial court's decision be affirmed. Vacova points to the "time is of the essence" clause in this contract and argues that there is no conflict between an agreement that time is of the essence and a note stating that it is payable in 3 days. Mr. Farrell counters this by arguing that since the purchase and sale agreement doesn't refer to the note and since the sale itself could not close for many months the

"time is of the essence" clause isn't applicable to the note, and unlike the note in the *Green River* transaction, this note (although referring to the earnest money agreement) doesn't say that it is "subject to" the earnest money agreement. Mr. Farrell argues that the note provides its own remedy for default, *i.e.*, a suit for collection, and that he was legally entitled to a demand for payment, and a reasonable time to pay the note before being subjected to forfeiture. Vacova argues that the note was made payable to The Heller Company, rather than to Vacova, so that Vacova did not have the remedy of direct enforcement of the note.

With these arguments in mind, we turn to an analysis of *Green River*. There, the plaintiff purchaser under a real estate earnest money receipt failed to timely pay a 60-day note delivered "as earnest money in part payment of the purchase price". *Green River*, at 247. The note was referred to in the earnest money agreement, which contained the usual "time is of the essence" clause. Typed onto the note, which was on a preprinted form, were the words "subject to Earnest money agreement #31270." Following the trial, at which parol evidence was admitted in the form of testimony by the seller that the purchaser's agent had made a verbal representation that the note would be paid within 60 days, the trial judge found in essence that the recital in the note that it was taken "as earnest money in part payment" was false. The trial court interpreted the contract in such a manner to effectively find that the note was taken "as evidence" of the promise to pay $5,000 within 60 days. As noted by Justice Finley in his concurring opinion, *Green River*, at 254: "Whether a note is taken in payment of an obligation, or as evidence thereof, is a question of fact."

Similarly to our present case, the purchaser in *Green River* failed to timely pay the note. After several inquiries as to when the note would be paid, the sellers in that case gave notice that the contract was rescinded. Six days later the purchaser made the entire cash down payment called

for by the earnest money agreement, inclusive of the payment of the $5,000 note, and on that same day the purchaser paid the accrued interest on the note. The sellers refused to proceed with the sale. The purchaser brought suit for specific performance. The trial court's decision that the failure to timely pay the $5,000 note (the payment was 37 days late at the time the sellers declared the contract to be rescinded) justified rescission of the contract was affirmed on appeal to the Supreme Court.

The appeal turned on whether the parol evidence was properly admitted at trial. The *Green River* majority found the testimony of the representative that the 60-day note would indeed be paid in 60 days did not violate the parol evidence rule. The testimony was consistent with the terms of the written agreement, once the contract and note, when read together, were properly construed. The court utilized various rules of contract construction to construe the contract. *Green River*, at 248-50. Furthermore, even if the patent ambiguities of the contract had not been reconciled by means of the rules of contract construction, the result would have been an ambiguous contract and "[i]t is axiomatic that extrinsic evidence . . . is admissible to clarify such matters." *Green River*, at 250. Once the parol evidence issue was resolved, there was substantial evidence to support the trial court's interpretation of the contract in question.

Insofar as it deals with the issue of parol evidence, *Green River* must now be read in the light of *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990). The parol evidence admitted in *Green River* would also withstand appellate scrutiny under *Berg*:

> We note with approval the following general statement of the context rule, which we reaffirm, contained in *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944):
>> May we say here that we are mindful of the general rule that parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake. But, as stated in *Olsen v. Nichols*, 86 Wash. 185, 149 P.

668 [(1915)], parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing. Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument. It is the duty of the court to declare the meaning of what is written, and not what was intended to be written. If the evidence goes no further than to show the situation of the parties and the circumstances under which the instrument was executed, then it is admissible.

*Pollock*, at 348-49.

*Berg*, at 669.

Neither Mr. Farrell nor Vacova have properly interpreted *Green River* in the context of this appeal. It is true, as argued by Mr. Farrell, that *Green River* was decided in the context of a full trial, rather than in the context of a summary judgment proceeding. It is also true that the earnest money agreement calls for a $10,000 cash payment on March 14, 1989, and that the note signed that same day states on its face that it is signed "as the earnest money" — in apparent contradiction of the earnest money clause. It is also true that the contract (which had been prepared and was being signed before Vacova learned that Mr. Farrell needed 3 days to transfer funds in order to pay the cash) does not refer to the note and that the note does not say on its face that it is "subject to" the purchase and sale agreement. It is also true that the legal effect of contracts tied to promissory notes depends on the intent of the parties, and whether a note is taken "in payment of an obligation, or as evidence thereof" is a question of fact. *Green River*, at 254.

But the validity of these contentions does not control the outcome of this case. Here there is no dispute whatsoever as to the reason for the note being signed. The contract called for an immediate payment of $10,000 cash,

into an interest bearing trust account, with the interest to accrue to Vacova, except in the event of Vacova's default. Mr. Farrell did not have $10,000 cash readily available. He needed to transfer funds before he could make the payment. He needed 3 days to transfer the funds. But for Mr. Farrell's lack of immediate cash, there would have been no note. The record contains no other explanation for why the $10,000 cash wasn't paid on March 14, 1989, nor for why the 3-day note was signed. Mr. Farrell has provided only the bare assertion that the parties intended the note to be "in payment of " the obligation, rather than "as evidence of" the obligation. This is a conclusory statement which is unsupported by any evidentiary facts. At his deposition, Mr. Farrell acknowledged that by its terms the note was due and payable on March 17, 1989. His only explanation as to why the $10,000 was not paid on that day is that he understood the note could be paid as late as March 21 when Mr. Hopkins was due back in town. The record is devoid of any explanation of why Mr. Hopkins might need to be physically present at The Heller Company in order for the note to be paid, but the note was not paid on March 21 in any event. Instead, Mr. Farrell made a unilateral decision to pay only half the note, and in effect to try to renegotiate the contract to allow himself 3 days to review the engineering drawings before paying the other half of the first installment. In his deposition, Mr. Farrell admitted that this was his unilateral decision and that when he told this to Vacova, on March 21, 1989, it did not agree to such proposal, instead stating that was a problem.

 Under these undisputed facts, there is no other reasonable conclusion to be drawn but that the note was signed not "as payment" of the earnest money as stated on the face of the note, but rather as evidence of the obligation to pay $10,000 cash on March 17, 1989, 3 days later than originally agreed. Mr. Farrell has provided no evidence to the contrary.

> A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Otherwise, a question of interpretation of an integrated agreement is to be determined as a question of law.

Restatement (Second) of Contracts § 212(2) (1981); *Berg*, at 668.

On the undisputed facts of this case, we conclude as a matter of law that the note, although stating on its face that it was signed "as payment" of the first earnest money installment, was instead signed as evidence of Mr. Farrell's obligation to pay $10,000 cash on March 17, 1989. When he failed to do so, Vacova was justified in rescinding the contract.[4]

■ While it is not true, as argued by Vacova, that *Green River* controls and determines the outcome of this case, the result is the same as in *Green River*; that is, we have found the rescission in this case to be justified. Our decision is based on summary judgment law, on the parol evidence rule, and on the materiality of the breach by Mr. Farrell. With respect to the latter ground, Mr. Farrell argues that "forfeiture" of his rights under the purchase and sale agreement is too harsh a result, in that Vacova was not prejudiced by the late payment. Mr. Farrell argues that by the time of the hearing on summary judgment, Vacova had exactly what it had bargained for to that stage of the contract — $20,000 in trust. While Vacova had bargained for the interest on the trust deposits, as well as the principal, and while the late payments certainly reduced the available interest, Mr. Farrell is correct in the proposition that failure to pay promptly

---

[4]Although the earnest money clause allowed Vacova to retain the earnest money trust deposits, together with the accrued interest, as liquidated damages in the event of purchaser's default, Vacova has not sought such a remedy. Rather, Vacova's position is that since it elected to rescind the contract prior to the moneys being paid into trust, the trust deposits and the accrued interest thereon belong to Mr. Farrell. This is correct. *See, e.g., J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 480, 392 P.2d 215 (1964). This is a rescission case, rather than a contract forfeiture case.

may or may not excuse performance and warrant cancellation of a contract. The materiality of the breach is the important question, and materiality depends upon the circumstances of each particular case. *Jacks v. Blazer*, 39 Wn.2d 277, 235 P.2d 187 (1951). Mr. Farrell also urges this court to rule that he was entitled as a matter of law to notice that Vacova considered his failure to timely pay to be material, and that he should have been given a reasonable time thereafter to cure the default. Mr. Farrell points out that the sellers in *Green River* made several inquiries as to when their note would be paid, and they allowed the purchaser a reasonable time to pay the note (37 days) before declaring the contract terminated. *Green River*, at 251. Mr. Farrell also argues that the mere fact that a contract declares time to be of the essence doesn't necessarily make it so, and is only one of many factors to be considered. *Local 112, I.B.E.W. Bldg. Ass'n v. Tomlinson Dari-Mart, Inc.*, 30 Wn. App. 139, 632 P.2d 911, *review denied*, 96 Wn.2d 1017 (1981).

Vacova responds by arguing that the contract provides for rescission in the event of the purchaser's default, that time was of the essence because the contract so states, and that from the start Vacova was looking for a financially responsible purchaser who could and would put up substantial earnest money and pay all cash to seller at closing. Vacova's position with respect to the materiality of the late payment may be characterized as its conviction that when the very first earnest money installment wasn't paid on time, it realized that Mr. Farrell didn't fit its criteria for a financially responsible purchaser. Vacova thus wanted out of the deal, and elected to rescind.

We will first address Mr. Farrell's notice and reasonable time to perform arguments. In fact, Vacova *did* give notice to Mr. Farrell that his failure to timely pay the note was considered by Vacova to be a material breach — the letter to Mr. Hopkins delivered on March 21, 1989, provided such notice, albeit without any period of grace in which to cure the default. But such a period of grace was

not required under the circumstances of this case, because Vacova had not previously granted indulgences to Mr. Farrell with respect to the timeliness of payments. *Cf. Reed v. Eller*, 33 Wn. App. 820, 825, 664 P.2d 515 (upon the first default, where a contract provides that time is of the essence, a seller may declare an enforceable forfeiture, but if the seller permits late payments to be made and accepts them without protest, strict performance as to time of payment is waived and the seller must then give notice and a reasonable time to perform before claiming a forfeiture), *review denied*, 99 Wn.2d 1015 (1983).

■ While the *Green River* court noted that the rescinding sellers made several inquiries as to when their note would be paid, and that those sellers gave the defaulting purchaser a reasonable time to pay, there was no holding that such inquiry and period of grace were legally required as a condition precedent to rescission. While rescission and forfeiture are somewhat analogous, in that both remedies bring an end to a contract, rescission contemplates full restoration of the parties to their precontract position, insofar as is practicable.[5] *Yount v. Indianola Beach Estates, Inc.*, 63 Wn.2d 519, 525, 387 P.2d 975 (1964). Forfeiture, on the other hand, implies part performance and sometimes substantial performance, followed by a material breach, and no restoration of the parties to their precontract position. Rather, the breaching purchaser forfeits both that which he intended to purchase and the payments he has previously made. The resulting hardship gave rise to the doctrine that "forfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit

---

[5]As will be apparent to the scholarly reader, the term "rescission", as used by the parties to this appeal, as used by the Supreme Court in *Green River*, and as used in this opinion, is the equivalent of a discharge from further duty following a material breach by one of the parties. Such a discharge should be distinguished from a "rescission" as that term is used by Corbin, for example, a *mutual* agreement by the parties to a contract to discharge and terminate their duties under the contract. 5A Corbin, *Contracts* §§ 1236-1237 (1964); 6 A. Corbin, *Contracts* §§ 1253-1257 (1962).

of no denial." *Ryker v. Stidham*, 17 Wn. App. 83, 89, 561 P.2d 1103 (1977). These same equitable considerations sometimes caused the courts to "rewrite" executory real estate contracts to grant reasonable periods of grace before allowing forfeiture. *Ryker*, at 89-90.

This is essentially what Mr. Farrell asks this court to do, to "rewrite" his contract with Vacova in order to grant a reasonable period of grace for the payment of the first earnest money installment (and also the second).

Because we find that the failure to timely pay the 3-day note was a *material* breach of the purchase and sale agreement, we decline to grant the relief requested by Mr. Farrell. The failure to timely pay the note, in view of the undisputed facts of this case, was a failure of consideration equivalent to the NSF check issued in the case of *Oman v. Yates*, 70 Wn.2d 181, 422 P.2d 489 (1967). The earnest money agreement in that case provided that one Mr. Rheims would make all payments for the purchase of a house by Mrs. Oman. The purchase price was $37,500 with $3,750 as earnest money and all cash at closing inclusive of the earnest money deposit. Mr. Rheims issued a check for $3,750 and delivered it into escrow. The check was returned NSF. Mr. Rheims then died. Mrs. Oman filed a claim against the Rheims estate, demanding specific performance of the contract, in her capacity as third party beneficiary. The sellers filed their own claim against the estate, seeking $3,750 as liquidated damages for the nonperformance by the deceased, "without prejudice to a possible claim for specific performance . . .". (Italics omitted.) *Oman*, at 183.

Later, the sellers elected not to seek specific performance, and instead settled with the Rheims estate for $3,750 in liquidated damages. This settlement was made without the knowledge of Mrs. Oman. Following a trial, judgment was entered in favor of the sellers and the estate.

After disposing of several issues not relevant to the instant appeal, the *Oman* court stated that Mrs. Oman,

as donee beneficiary, took the contract subject to such defenses as the sellers might care to assert by reason of Mr. Rheims' default. Mr. Rheims was in default of the earnest money agreement from its inception. His earnest money check was not good. From the outset the sellers had a defense if they cared to exercise it. Mr. Rheims failed to perform a condition, that is, to pay the initial earnest money. The sellers could have elected specific performance, in which event Mrs. Oman would have been entitled to the property, but since the sellers elected, for reasons of their own, to seek liquidated damages instead, Mrs. Oman was subject to the same defense as would have been successful against Mr. Rheims — he could not have specific performance over the sellers' objections, and neither could the donee beneficiary.

Similarly, Vacova could have elected to pursue specific performance, but elected instead to cancel (rescind) the contract without seeking damages. The decision to rescind was made before Mr. Farrell made an effort to partially pay the note, and nearly 8 weeks before Mr. Farrell made the remainder of the note payment. That Mr. Farrell failed to pay the note until May 9, 1989, illustrates the validity of Vacova's concerns about his financial responsibility, whether or not Mr. Farrell knew Vacova's criteria for a financially responsible purchaser. A purchaser who asks for 3 days in order to transfer funds with which to pay moneys which are contemporaneously due, and who signs a 3-day note as evidence of his good-faith intention to pay those funds, and who then fails to pay for 8 weeks, is in no better position than a purchaser who issues an NSF check or a check postdated 3 days in advance so that he can transfer funds, and who then fails to cover the check within those 3 days. The breach is material in any of these events. Absent a clear agreement to the contrary the seller is not obliged to sue for collection as opposed to declaring the contract to be terminated for such a material breach.

Mr. Farrell is in no better position than the purchaser in *Green River* who failed to pay a 60-day note until 6 days after the sellers declared the contract to be rescinded. By the terms of the *Green River* contract, the sellers had the right to elect to terminate the contract upon the default of the purchaser. *Green River*, at 250. The Vacova-Farrell contract contains similar provisions. We decline the invitation to rewrite the parties' contract.

As for Mr. Farrell's contention that time was not of the essence with respect to the payment of the 3-day note, when an agreement makes time of the essence, fixes a termination date, and there is no conduct giving rise to estoppel or waiver, the agreement becomes legally defunct upon the stated termination date if performance is not tendered. *Local 112, I.B.E.W. Bldg. Ass'n v. Tomlinson Dari-Mart, Inc.*, 30 Wn. App. 139, 142, 632 P.2d 911, *review denied*, 96 Wn.2d 1017 (1981). There is no competent evidence in this case of any conduct giving rise to estoppel or waiver. Mr. Farrell merely argues that time could hardly have been of the essence, since everybody realized the sale would not close for many months. We have held that the failure to timely pay the 3-day note was a material breach of the contract terms. We also hold that time was of the essence with respect to the due date for that note payment, there being no admissible evidence to the contrary, and in view of the undisputed facts of this case.

CONCLUSION

The judgment of the trial court is affirmed.

GROSSE, C.J., and FORREST, J., concur.